479 S.E.2d 871

**In the Matter of WILLIS ALVIN M.**

**No. 23259.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 1996.

Decided Nov. 18, 1996.

Anthony J. Sabatino, Morgantown, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Victor S. Woods, Assistant Attorney General, Charleston, for Appellee.

PER CURIAM:

This juvenile proceeding is before this Court [1] upon appeal from the final order of the Circuit Court of Preston County, West Virginia, entered on May 2, 1995. As reflected in the order, the appellant, Willis Alvin M., was found guilty by a jury of several criminal offenses, and the circuit court found no less restrictive alternative than placement of the appellant at the Industrial Home for Youth in Harrison County, West Virginia, with a recommendation of immediate transfer to the Davis Center in Tucker County, West Virginia. *W. Va. Code*, 28–3–1, *et seq.* [1981]; *W. Va. Code*, 25–1–3 [1994]. Pursuant to the order, the appellant, after completing the program for youthful offenders at the Davis Center, is to be placed upon probation. Upon appeal, the appellant contends that the circuit court should have placed him upon probation without prior commitment to a correctional facility.

The circuit court granted a stay of the order pending appeal. This Court has before

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons expressed below, the final order of May 2, 1995, is affirmed.

I

In August 1994, the home of Larry and Gloria Sidebottom in Preston County was burglarized. The Sidebottoms had been on a family vacation. Upon their return, they found that a number of items were missing from their home including two rifles, a pistol, a video camera and more than one thousand dollars in cash. In addition, their home had been vandalized. Various possessions of the Sidebottoms had been destroyed or urinated upon, and a weapon had been fired within the house. Moreover, the Sidebottoms subsequently learned that their telephone had been used to place long distance calls to a pornographic call-in service.

During the ensuing police investigation, Duane L., a member of a family residing near the Sidebottoms, gave a statement to Trooper Gordon Ingold of the West Virginia Department of Public Safety in which he implicated himself, Kevin S. and the appellant in the break in.[2] Several items of the missing property had, in fact, been located at, or in the vicinity of, Duane L.'s residence. Thereafter, on September 30, 1994, according to the evidence of the State, Duane L. was assaulted and beaten by the appellant because he had implicated the appellant to the Trooper. As a result of the beating, Duane L. was injured and required medical treatment.

In December 1994, a delinquency petition was filed in the circuit court against the appellant, charging him with various offenses concerning the burglary of the Sidebottom home and, in addition, charging him with the battery of Duane L. *W.Va.Code*, 49-5-7 [1982]. Similar petitions, with regard to the burglary, were filed against Duane L. and Kevin S. On February 14, 1995, an adjudica-

tory hearing was conducted upon the charges against the appellant, at the conclusion of which the jury found the appellant guilty of (1) nighttime burglary, (2) conspiracy with Duane L. and Kevin S. to commit nighttime burglary, (3) grand larceny and (4) battery of Duane L.

On March 9, 1995, the Preston County Probation Department completed a predisposition investigation report concerning the appellant. Although the report recommended that a more complete psychological and educational evaluation of the appellant be ordered prior to final disposition, the report noted that the appellant had "a history of threatening and intimidating his peers" and had, in fact, been expelled from school for that reason. In addition, the report noted that the appellant indicated that, because the August 1994 burglary was his first offense, "[t]hey won't do anything to me." Upon review of the predisposition investigation report, the circuit court ordered that the appellant be placed at the Northern Regional Detention Facility in Wheeling, West Virginia, for a thirty-day period, for a complete psychological and educational evaluation. *W. Va.Code*, 49-5-13 [1995]; *W. Va.Code*, 49-5-13a [1980].

The appellant's placement at the Northern Regional Detention Center resulted in the April 7, 1995, report of Dr. Charles W. Hewitt, a psychologist. Dr. Hewitt's report indicated that the appellant's behavior and academic performance at the Detention Center were good. However, concluding that the appellant has a problem with controlling aggression, the report also stated:

Willis lacks appropriate, normal empathy. He is prone to antisocial acting out, and he is moving quickly toward the development of an antisocial personality, though he is not quite there. He has a proclivity to deny responsibility for obvious misbehaviors, and there is a strong vengeful streak to his personality. His family (at

2. As in *State v. Sonja B.*, 183 W.Va. 380, 395 S.E.2d 803 (1990), we continue the practice of using a juvenile's last initial, rather than the

juvenile's last name. 183 W.Va. at 381 n. 1, 395 S.E.2d at 804 n. 1.

least as seen through his mother's eyes) conspires with him in his denial, making it much more difficult for Willis to acknowledge personal responsibility for his actions and less likely that he will be rehabilitated through his experiences so far with the Court. He is also developing a leadership role in antisocial pursuits in his community.

. . . .

[B]ecause Willis is not likely to get a GED, a high school diploma, or vocational training if left in his home community, and because a GED, high school diploma, and vocational training will make him more employable and hence increase his chances of rehabilitation, and because he remains a significant risk to the community, it is recommended that from a psychological and social standpoint Willis be placed in a reasonably well-structured and semi-secure institution where he can work on his GED and/or diploma and get some vocational training. The Court may wish to consider placement at Davis Center.

On April 20, 1995, following the appellant's return from the Northern Regional Detention Facility, the circuit court conducted a dispositional proceeding. *W. Va.Code*, 49–5–13 [1988]. During the proceeding, the appellant submitted evidence to the effect that he would be a good candidate for probation. Nevertheless, expressing its concern with regard to Dr. Hewitt's discussion of the appellant's aggressive tendencies and developing "antisocial personality," the circuit court stated: "[U]pon the Court having adjudicated delinquency by reason of your having been convicted of four different crimes upon the trial by jury, the Court commits you to the West Virginia Industrial School for Youth with a recommendation that they immediately transfer you to the Davis Center [.]" As stated in the final order, the circuit court based its ruling "upon the totality of the circumstances" and found no less restrictive alternative.

II

As stated above, the appellant contends that the circuit court should have placed him upon probation without prior commitment to a correctional facility. In particular, the appellant asserts that, inasmuch as he had no prior adjudications of delinquency and demonstrated good behavior and academic performance while at the Northern Regional Detention Center, the circuit court committed error in finding commitment to a correctional facility to be the least restrictive alternative.[3] The State, on the other hand, asserts that the circuit court's disposition

---

**3.** As indicated in his petition for appeal and brief, the appellant focuses upon the denial of his request for probation following his convictions of (1) nighttime burglary, (2) conspiracy with Duane L. and Kevin S. to commit nighttime burglary, (3) grand larceny and (4) battery of Duane L. The appellant also asserts, however, that the circuit court committed error in admitting at trial, over the appellant's objection, the testimony of Duane L. about conversations he had with the appellant concerning the burglarizing of homes other than the Sidebottom home.

According to the appellant, the admission of that testimony violated the provisions of Rule 404(b) of the *West Virginia Rules of Evidence* which provides that evidence of other crimes, wrongs or acts may be admissible "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See State v. William T.*, 175 W.Va. 736, 738, 338 S.E.2d 215, 218 (1985), indicating that the *West Virginia Rules of Evidence* apply to juvenile adjudicatory proceedings. A careful review of the testimony of Duane L., however,

reveals no references to any actual burglaries of homes other than the Sidebottom home. As Duane L. testified:

Q. Had you talked about any other houses with him before?

A. We had talked about it, but we never did it.

. . . .

Q. Would you tell the jury what properties you had talked about previous?

A. It was no certain house or anything. We just talked about it.

It should be noted that the circuit court cautioned the jury that the above testimony was not to be considered as proving that the appellant committed the act of breaking into the Sidebottom home.

Whether, under the circumstances of this case, the testimony in question rises to the level of evidence of "other crimes, wrongs or acts" within the meaning of Rule 404(b) is somewhat doubtful. Rather, since the alleged conversations between Duane L. and the appellant may have taken place relatively close in time to the

was correct because the evidence indicates that the appellant (1) currently poses a risk to the community and (2) resides in a home unconducive to his acceptance of responsibility. Moreover, the State asserts that none of the appellant's acts of misconduct, at school or with regard to the break in and beating of Duane L., were due to factors beyond the appellant's control, and, as demonstrated by his experience at the Northern Regional Detention Center, the appellant responds favorably to a structured environment.

The circuit court's placement of the appellant at the Industrial Home for Youth, with a recommendation of immediate transfer to the Davis Center is governed by the provisions of *W. Va.Code*, 49–5–13(b)(5) [1988].[4] That statute authorizes a circuit court to commit a child to an industrial home or correctional institution "[u]pon a finding that no less restrictive alternative would accomplish the requisite rehabilitation of the child, and upon an adjudication of delinquency [.]" As this Court held in syllabus point 1 of *State ex rel. S.J.C. v. Fox*, 165 W.Va. 314, 268 S.E.2d 56 (1980), the failure of a circuit court to set forth a finding on the record, that there is "no less restrictive alternative" than commitment to an industrial home or correctional institution, deprives the circuit court of authority to order such a commitment. *See also* syl., *Larry L. v. State*, 191 W.Va. 165, 444 S.E.2d 43 (1994).

■ As the parties herein acknowledge, an important consideration of the law in this State concerning the dispositional stage of juvenile proceedings appears in *State ex rel. D.D.H. v. Dostert*, 165 W.Va. 448, 269 S.E.2d 401 (1980). In *D.D.H.*, a juvenile was con-

victed of grand larceny and breaking and entering. Although this Court set aside those convictions upon evidentiary grounds, we discussed, in *D.D.H.*, the provisions of *W. Va.Code*, 49–5–13(b)(5) [1978], which is substantially the same as *W. Va.Code*, 49–5–13(b)(5) [1988], concerning the dispositional stage, and the various factors to be considered by the circuit court as a prerequisite to concluding that commitment to an industrial home or correctional institution is the least restrictive alternative. As syllabus point 4 of *D.D.H.* holds:

In a juvenile proceeding it is the obligation of a trial court to make a record at the dispositional stage when commitment to an industrial school is contemplated under *W.Va.Code*, 49–5–13(b)(5) [1978] and where incarceration is selected as the disposition, the trial court must set forth his reasons for that conclusion. In this regard the court should specifically address the following: (1) the danger which the child poses to society; (2) all other less restrictive alternatives which have been tried either by the court or by other agencies to whom the child was previously directed to avoid formal juvenile proceedings; (3) the child's background with particular regard to whether there are pre-determining factors such as acute poverty, parental abuse, learning disabilities, physical impairments, or any other discrete, causative factors which can be corrected by the State or other social service agencies in an environment less restrictive than an industrial school; (4) whether the child is amenable to rehabilitation outside an industrial school, and if not, why not; (5) whether the dual goals of deterrence and juvenile responsibility can be achieved in some set-

break in of the Sidebottom home, this Court finds persuasive the comment in the State's brief that Duane L.'s responses to the above questions related more to the conspiracy charge against the appellant than to evidence of previous criminal conduct. *See United States v. Pace*, 981 F.2d 1123, 1135 (10th Cir.1992), *cert. denied sub nom. Leonard v. United States*, 507 U.S. 966, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993), "[c]onduct during the life of a conspiracy that is evidence of the conspiracy is not Rule 404(b) evidence." In any event, in view of the lack of specificity of the

testimony and in view of the circuit court's cautionary instruction to the jury, this Court concludes that the appellant's assertion of error concerning the testimony is without merit.

4. The provisions of *W. Va.Code*, 49–5–13(b)(5) [1988], were amended by the West Virginia Legislature in 1995. However, the 1995 amendments went into effect subsequent to the May 2, 1995, final order of the circuit court.

ting less restrictive than an industrial school and if not, why not; (6) whether the child is suffering from no recognizable, treatable determining force and therefore is entitled to punishment; (7) whether the child appears willing to cooperate with the suggested program of rehabilitation; and (8) whether the child is so uncooperative or so ungovernable that no program of rehabilitation will be successful without the coercion inherent in a secure facility.

See also syl. pt. 1, *State v. M.E.,* 170 W.Va. 367, 294 S.E.2d 171 (1982); *State ex rel. R.S. v. Trent,* 169 W.Va. 493, 498, 289 S.E.2d 166, 170 (1982).

In so holding, this Court, in *D.D.H.,* stressed the importance of the development by the circuit court of a record which "discloses conclusively that the trial court has considered all relevant factual material and dispositional theories[.]" 165 W.Va. at 471, 269 S.E.2d at 416. As we observed in *D.D.H.,* the development of such a record at the dispositional stage allows this Court to make an intelligent review, "keeping in mind that discretionary, dispositional decisions of the trial courts should only be reversed where they are not supported by the evidence or are wrong as a matter of law." 165 W.Va. at 471, 269 S.E.2d at 416.

■ Here, the circuit court conducted an evidentiary hearing at the dispositional stage and also considered other matters of record, including the predisposition investigation report and the report of Dr. Hewitt. The appellant was permitted to submit evidence upon his behalf. The transcript of the dispositional hearing reveals a lengthy discussion and analysis by the circuit court of the circumstances surrounding its conclusion that commitment to the Industrial Home for Youth, with a recommendation of immediate transfer to the Davis Center, is the least restrictive alternative. In particular, the circuit court noted that the crimes of which the appellant had been found guilty were quite

serious and were committed within a context of general antisocial behavior exhibited by the appellant, as discussed by Dr. Hewitt.

While this Court is not unmindful that the appellant's behavior and academic performance at the Northern Regional Detention Center were good, we share the concerns of the Preston County Probation Department, Dr. Hewitt and the circuit court that the appellant has "a history of threatening and intimidating his peers" and remains a risk to the community. Certainly those concerns are confirmed by the convictions of burglary, conspiracy, grand larceny and battery. Moreover, the record supports the view that the appellant has a tendency to deny responsibility and is supported in that regard by his family. Dr. Hewitt's statement that the appellant "is also developing a leadership role in antisocial pursuits in his community" is particularly ominous.

Upon all of the above, therefore, and with particular regard to the principles expressed in *D.D.H.,* this Court is of the opinion that the Circuit Court of Preston County acted within its discretion in committing the appellant to the Industrial Home for Youth, with a recommendation of immediate transfer to the Davis Center. Accordingly, the final order of the circuit court is affirmed.[5]

Affirmed.

RECHT, Judge, sitting by temporary assignment.

---

5. During this appeal, this Court expressed its concern with regard to the effect of the appellant's age upon the possibility that the final order of the circuit court would be affirmed. In re-

sponse, however, the State indicated as follows in a letter dated October 16, 1996:

During oral argument in the above-referenced case, the Court posed the question of

whether the appellant could still be sent to the Davis Center, as originally ordered by the circuit court. The Court perceived that there might be a problem in light of the fact that the appellant has turned nineteen years of age during the pendency of the present appeal. (Appellant was born May 17, 1977.)

In discussions with officials from the Davis Center, I have been informed that there is no age restriction pertaining to persons who can be sent to the facility, so long as the juvenile court retains jurisdiction pursuant to W.Va. Code sec. 49–5–2(f). Section 49–5–2(f) states that 'the jurisdiction of the court which adjudged the juvenile a delinquent shall continue until the juvenile becomes twenty-one years of age.'

Consequently, there is no impediment to the implementation of the circuit court's original recommendation that appellant be sent to the Davis Center, providing that the appellant has not reached the age of twenty-one when the order is given effect. Indeed, an official from the Davis Center informed me that they routinely take nineteen year olds and, although relatively rare, have taken custody of twenty-year-olds in the past.