517 S.E.2d 746

**STATE of West Virginia, Appellee,**

v.

**CRAIG D., Appellant.**

No. 25195.

Supreme Court of Appeals of
West Virginia.

Submitted Nov. 12, 1998.

Decided Dec. 4, 1998.

Dissenting Opinion of Justice Starcher
July 30, 1999.

Darrell V. McGraw, Esq., Attorney General, Barbara H. Allen, Esq., Deputy Attorney General, Charleston, West Virginia, Attorneys for the State of West Virginia.

Gregory S. Hurley, Esq., Public Defender Corporation, Fayetteville, West Virginia, Attorney for Craig D.

PER CURIAM:

The appellant in this case, Craig D.,[1] appeals a final order of the Circuit Court of Fayette County entered on December 11, 1997. In that order, the 17–year–old appellant was placed in the custody of the Department of Corrections until he is 19 years of age. In this appeal, the appellant argues that the circuit court failed to consider less restrictive alternatives, and thereby erred in placing him with the Department of Corrections.

The Court has before it the petition for appeal, all matters of record, and the briefs of counsel. For the reasons set forth below, we affirm the final order of the circuit court.

## I.

On September 22, 1997, in Gauley Bridge, West Virginia, 17–year–old Craig D. robbed Richard Hayhurst, a 61–year–old motel clerk, by the presentment of a gun. The victim was threatened and placed in fear, not knowing (as Craig D. later contended) that the weapon was a toy gun. Craig D. took $219.00 from Mr. Hayhurst and fled the scene.

Craig D. was arrested the next day, and a juvenile petition was filed alleging that the infant committed the offense of "aggravated robbery." On October 17, 1997, pursuant to a plea agreement, Craig D. made an admission before the circuit court to the offense of "unaggravated robbery" in violation of W.Va. Code, 61–2–12 [1961].

As a part of the plea agreement, the State recommended to the circuit court at the December 11, 1997 dispositional hearing that Craig D. receive extra-parental supervision provided by the probation department, as provided for in W.Va.Code, 49–5–13(b)(3) [1997]. At that hearing, the circuit court reviewed on the record a "social summary" prepared by the probation department. The summary indicated that Craig D. was in the 12th grade at Gauley Bridge High School with "a total cumulative grade point average of 1.7837 with problems in excessive tardiness and insubordination." Between the time of the plea hearing and the dispositional hearing, Craig D. had "accumulated eight tardies and if he gets one more, he will be expelled."

The court also noted on the record that Craig D. and his girlfriend, who was then 16 years of age, had a daughter who was born 6 days after the robbery of Richard Hayhurst, and that in the nearly 3 months since the crime Craig D. had only seen the child on three occasions. The court indicated that there were tensions between Craig D.'s family and the family of his girlfriend.

1. Consistent with our past practice in juvenile cases, we do not use the last names of the parties. *See In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

The court also indicated that while Craig D.'s parents were of the belief that their son "was influenced by other people" to rob Mr. Hayhurst, the parents continued to let Craig associate with these people. The court also found that Craig's parents did little to assist him in his school performance.

Based upon the facts and circumstances presented in the social summary and at the dispositional summary, the court concluded that commitment to the Department of Corrections was an appropriate disposition for Craig D. The court imposed such commitment until Craig's 19th birthday, or May 22, 1999.

## II.

Craig D. contends that the circuit court failed to make the necessary factual findings at the dispositional hearing that no less restrictive alternative was available, and that the court's failure to grant Craig D. extraparental supervision was an abuse of discretion.

The State, meanwhile, argues that the circuit court's decision was procedurally sound and well within its discretion. The State asserts that while the circuit court did not make specific findings of fact that no less restrictive alternative was available, the court did make a record supporting Craig D.'s placement with the Department of Corrections.

■■■■ W.Va.Code, 49–5–13(b)(5) [1997] authorizes a circuit court to commit a juvenile to a correctional institution for juveniles "upon a finding that the best interests of the juvenile or the welfare of the public require it, and upon an adjudication of delinquency[.]" When a circuit court contemplates commitment to a correctional facility, it is required to make a record and set forth its reasons for selecting that dispositional alternative. As we explained in Syllabus Point 4 of *State ex rel. D.D.H. v. Dostert*, 165 W.Va. 448, 269 S.E.2d 401 (1980):

> In a juvenile proceeding it is the obligation of a trial court to make a record at the dispositional stage when commitment to an industrial school is contemplated under W.Va.Code, 49–5–13(b)(5) (1978) and

where incarceration is selected as the disposition, the trial court must set forth his reasons for that conclusion. In this regard the court should specifically address the following: (1) the danger which the child poses to society; (2) all other less restrictive alternatives which have been tried either by the court or by other agencies to whom the child was previously directed to avoid formal juvenile proceedings; (3) the child's background with particular regard to whether there are pre-determining factors such as acute poverty, parental abuse, learning disabilities, physical impairments, or any other discrete, causative factors which can be corrected by the State or other social service agencies in an environment less restrictive than an industrial school; (4) whether the child is amenable to rehabilitation outside an industrial school, and if not, why not; (5) whether the dual goals of deterrence and juvenile responsibility can be achieved in some setting less restrictive than an industrial school and if not, why not; (6) whether the child is suffering from no recognizable, treatable determining force and therefore is entitled to punishment; (7) whether the child appears willing to cooperate with the suggested program of rehabilitation; and, (8) whether the child is so uncooperative or so ungovernable that no program of rehabilitation will be successful without the coercion inherent in a secure facility.

In *Dostert*, we stressed that it is important that a circuit court develop a record that "discloses conclusively that [it] has considered all relevant factual material and dispositional theories[.]" 165 W.Va. at 471, 269 S.E.2d at 416. We also emphasized that " 'discretionary, dispositional decisions of the trial courts should only be reversed where they are not supported by the evidence or are wrong as a matter of law.' " *Id.*

■■■ In this case the circuit court conducted a sufficiently detailed dispositional hearing in an effort to determine the most suitable dispositional alternative. The circuit court considered Craig D.'s school conduct, as well as his parents' inability to provide proper supervision. The court found that Craig D.'s offense was serious, regardless of

whether the gun was real or a toy, because Craig D. could just as easily have gotten killed during the robbery. While Craig D. had no prior involvement with the juvenile justice system, the court concluded that rehabilitation was more likely in a secure facility because the appellant would receive more direction, and would be more likely to understand and take responsibility for his actions.

After reviewing the record, it is apparent that the circuit court explored the seriousness of the appellant's offense, and the likelihood of rehabilitation in a correctional facility. The circuit court was therefore within its discretion in committing Craig D. to the Department of Corrections.

Accordingly, the final order of the Circuit Court of Fayette County is affirmed.

Affirmed.

STARCHER, Justice, dissenting:

(Filed July 30, 1999)

I dissent because I disagree with the majority opinion's conclusion that "the circuit court conducted a sufficiently detailed dispositional hearing in an effort to determine the most suitable dispositional alternative" to incarceration. The prosecutor in this case recommended Craig D. be returned to the custody of his parents with "extraparental" supervision provided by the probation department. The dispositional hearing to determine Craig D.'s sentence did not contain any of the required findings or analysis of why this recommended sentence was rejected, nor any findings to suggest why incarceration with the Department of Corrections was the best alternative. Therefore, in my opinion, Craig D.'s incarceration constituted an abuse of the circuit court's discretion.

We have held that a trial court must make a detailed record in a juvenile proceeding where incarceration is viewed as a sentencing alternative. As the majority opinion states, we held in Syllabus Point 1 of *State ex rel. D.D.H. v. Dostert,* 165 W.Va. 448, 269 S.E.2d 401 (1980) (emphasis added) that "it is the *obligation* of a trial court to make a record," and that the trial court *"must* set forth reasons" for concluding that incarceration is the best alternative.

Accordingly, a trial court has an obligation, and therefore must, at a minimum, set forth its consideration of the eight factors listed in Syllabus Point 1 of *State ex rel. D.D.H. v. Dostert.* (*See* the Syllabus of the majority's opinion.)

When an adult criminal defendant is sentenced, this Court has not hesitated to impose procedures to ensure that the trial court sentences the adult defendant fairly, openly and publicly based upon accurate information. If a trial court "runs roughshod" over these sentencing procedures, it commits reversible error.

For example, in *State v. Holcomb,* 178 W.Va. 455, 360 S.E.2d 232 (1987) we stated that under Rule 32 of the *West Virginia Rules of Criminal Procedure,* an adult defendant has a right to "allocution," or in other words, the right to comment on matters relating to sentencing. The failure of a trial court to merely address the adult defendant at sentencing, or to "ask him if he wishes to make a statement" constitutes reversible error.

Similarly, in *State v. Craft,* 200 W.Va. 496, 490 S.E.2d 315 (1997), we held that when an adult defendant claims there is a factual inaccuracy in a presentence investigation report, Rule 32 of the *West Virginia Rules of Criminal Procedure* requires the sentencing court to make *written* findings about the allegedly inaccurate fact or make a *written* determination that such findings are unnecessary because the disputed fact will not be relied upon in sentencing.

I am at a loss to understand why, in this and other juvenile cases, courts fail to protect the rights of juvenile defendants with the same care given to adult defendants. When an adult defendant is sentenced, Rule 32 of the *Rules of Criminal Procedure* requires that a record be created so that the defendant and the public understands the basis for the sentence imposed.

A juvenile disposition should be given the same, if not more, care as an adult defendant's sentencing. Our mandate in *State ex rel. D.D.H. v. Dostert* was not crafted with the sole intent of creating a record for this Court to look at on appeal. Instead, by the

court stating on the record its analysis of the eight factors set out in *State ex rel. D.D.H. v. Dostert*, pursuant to *W.Va.Code*, 49–5–13 [1997], the court will demonstrate to the juvenile and to the public[1] that it has considered all of the possible options, and adopted the least restrictive alternative to accomplish the required rehabilitation of the child. Furthermore, the court should, by enunciating its reasoning, demonstrate that the adopted disposition is required by the best interests of the child and the welfare of the public.

In sum, as in an adult sentencing under Rule 32 of the *West Virginia Rules of Criminal Procedure*, in a juvenile disposition a trial court should carefully prepare a detailed record using the factors contained in *State ex rel. D.D.H. v. Dostert*. This way, all who are involved will be explicitly and specifically apprised of the trial court's basis for imposing the particular disposition. In my opinion, the failure to do so is reversible error.

In this case, the circuit court failed to set out any consideration of the eight factors in *State ex rel. D.D.H. v. Dostert*. While a court has substantial discretion in determining a suitable disposition (or sentence), the circuit court failed to state any proper basis for its disposition in this case. Accordingly, I believe the circuit court abused its discretion and committed reversible error.

In the December 11, 1997 dispositional hearing, the circuit court allowed Craig D. to make a brief statement, where Craig D. apologized to the victim, Mr. Hayhurst, and said that he was sorry for scaring him. Craig D. also admitted that he had "made a pretty big mistake" by committing the robbery. (This is an understatement, considering this juvenile had no prior contact with the juvenile justice system.)

1. I recognize that juvenile proceedings are supposed to be confidential. However, as is clear from the letters in the record signed by local citizens in support of Craig D., the public is often aware and takes an interest in how the courts deal with troubled juveniles.

2. The "three visits" conclusion was based entirely upon an interview with Craig D.'s parents that is paraphrased in the social summary. Craig D.'s parents said:

The circuit court did not question Craig D. concerning the circumstances of his criminal act or his motive. Nor did the court ask Craig D. about any of the information in the social summary. The court did not question Craig D.'s parents concerning his home situation, yet seems to have based its disposition on their alleged inability or refusal to discipline him. If the court had made more extensive inquiries and a record of its findings as contemplated by *State ex rel. D.D.H. v. Dostert*, the court might have discovered that incarceration was not the best alternative for Craig D.

For example, the court based its disposition, in part, on the fact that Craig D.'s parents were not keeping their son from seeing the "wrong" people, and that Craig D. had *only* seen his infant daughter on three occasions in the 3 months since her birth.

A review of the social summary indicates that Craig D.'s daughter was born on September 28, 1997, 5 days after Craig D. was arrested and incarcerated. Craig D. remained incarcerated until October 17, 1997, and the probation officer's social summary discussing the three visits was completed on November 13, 1997. Craig D., therefore, had visited with his daughter three times, not over a 3–month period, but over at most a 4–week period.[2]

On appeal, Craig D. asserts that reason he never visited his daughter is because she was in the custody of his girlfriend's mother—and his parents would not let him visit because they thought the girlfriend's mother was a bad influence. The social summary suggests that the girlfriend's mother may have given Craig D. a *real* gun (not a toy gun as claimed by Craig D.) to use in the robbery, and told Craig D. to use it to find money to support her pregnant daughter.

> Since his return home, he has done very well, the first week was kind of rough, but he is attending school, keeping his curfew and helping us out more. He has seen the baby about three times.

There is nothing in the social summary to indicate when this interview took place; accordingly, the interview could have been conducted a significant time before the social summary was completed on November 13, 1997.

It therefore appears that Craig D.'s parents *were* keeping him from seeing the "wrong" people—*i.e.,* his girlfriend and her mother—and Craig D. never saw his daughter because he was either incarcerated or kept from visiting his child by his parents. Hence, two of the reasons underlying Craig D.'s disposition could have been explained had the circuit court conducted a proper hearing under *State ex rel. D.D.H. v. Dostert.*

There are two parts to the circuit court's "record" of Craig D.'s brief disposition hearing.

The first part of the "record" of Craig D.'s disposition consists of four pages of transcript where the circuit court quizzed Craig D. about his grades and classwork—Craig D. had an overall high school grade point average of 1.7, but in the semester before and after his arrest had maintained a 3.1 grade point average. While the majority opinion notes that Craig D. was tardy and insubordinate, and holds that this finding supported Craig D.'s incarceration, I find nothing in the record to suggest that the circuit court ever asked Craig D. to explain the "excessive tardiness and insubordination."

The second part of the circuit court's disposition "record" begins with the court saying, "I gave you an opportunity to talk. Now you're going to listen to me." The circuit court then spends four pages of transcript telling Craig D. that he has accepted "no responsibility for anything," and that

> ... with that kind of background, the Court feels that it has no alternative but to place you in the—with the Department of Corrections ... and see if they can give you some rehabilitation and direction, because you certainly need it. And if you don't learn something there, then you will have to suffer whatever consequences that are there as an adult.

At no place in the record does the circuit court explain why it felt it had no alternative to incarceration. Similarly, there is no explanation for why the circuit court rejected the prosecutor's recommendation that Craig D. be placed under the supervision of the probation office.

On this meager record, I believe that the circuit court's disposition of Craig D. was an abuse of discretion. The circuit court's disposition should have been reversed, and the circuit court compelled to make a proper record balancing the factors stated in *State ex rel. D.D.H. v. Dostert.*

I therefore respectfully dissent.