513 S.E.2d 908

**In the Interest of THOMAS L.**

No. 25353.

Supreme Court of Appeals of
West Virginia.

Submitted Nov. 12, 1998.

Decided Dec. 7, 1998.

William C. Meyer, II, Esq., Public Defender Services, Princeton, West Virginia, Attorney for Thomas L.

Darrell V. McGraw, Jr., Esq., Attorney General, Barbara H. Allen, Esq., Managing Deputy Attorney General, Charleston, West Virginia, Attorneys for the State of West Virginia.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Mercer County entered on February 17, 1998. Pursuant to that order, the appellant, Thomas L.,[1] was placed in the West Virginia Industrial Home for Youth [hereinafter "Industrial Home"] following a guilty plea to the charge of delivery of a controlled substance.[2] In this appeal, the appellant contends that the court erred by placing him in the Industrial Home.

This Court has before it the petition for appeal, all matters of record, and the briefs of counsel. For the reasons set forth below, we affirm the final order of the circuit court.

**1.** Consistent with our past practice in juvenile cases, we do not use the last names of the parties. *See In the Matter of Jonathan P.,* 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

**2.** The circuit court stayed execution of the commitment pending this appeal.

## I.

On May 9, 1997, Thomas L., then fifteen years old, sold two marijuana cigarettes to some friends for ten dollars. Thereafter, the group of friends, including Thomas L., got into a car and began driving around while smoking the marijuana. Tragically, the car crashed into a tree when the driver attempted to reach into the back seat for one of the marijuana cigarettes. Jamie C., a female juvenile who was also a passenger in the car, was killed. Thomas L. fled the scene and went to a nearby bowling alley to call his mother for a ride home.

Subsequently, the police learned of Thomas L.'s involvement in the accident, and he was charged with delivery of a controlled substance. On October 20, 1997, Thomas L. pleaded guilty to the charge pursuant to a plea agreement whereby the State agreed not to oppose his motion for probation.

During the dispositional phase of the case, it was learned that Thomas L. has a substance abuse problem relating to both drugs and alcohol. In fact, it was noted that he had been hospitalized for alcohol poisoning on two occasions.[3] During a hearing on December 15, 1997, the circuit court acknowledged that Thomas L. had been attending substance abuse counseling and appeared to be making good progress. Nonetheless, the circuit court ordered the probation officer to investigate the alternatives between probation and placement in the Industrial Home.

A second dispositional hearing was held on January 12, 1998. The circuit court again noted that Thomas L. was continuing to make progress in his counseling sessions. The circuit court discussed possibly placing him in a group home. The case was continued to allow the probation officer to locate a facility that would provide both punishment and rehabilitation.

At the final hearing on February 17, 1998, the circuit court was informed that Thomas

**3.** These incidents occurred in March and May 1997. The record is unclear as to whether the second hospitalization occurred before or after the car accident.

L. had tested positive for marijuana during a drug screening on January 26, 1998. The circuit court was also informed that Thomas L. had been suspended from school after he inappropriately touched a female student. Thereafter, the circuit court denied the motion for probation and ordered Thomas L. to be placed in the Industrial Home.

## II.

█ Thomas L. contends that he was placed in the Industrial Home solely because of the of death of Jamie C. He maintains that the circuit court was influenced by the presence of her parents at the final hearing. Thomas L. asserts that the circuit court overlooked the overwhelming evidence that he was making great strides in reforming his behavior. He argues that placement at the Industrial Home was not the least restrictive alternative in his case.

To the contrary, the State argues that the circuit court's decision was procedurally sound and well within its discretion. Recognizing that Thomas L. made some progress in his drug and alcohol treatment plan, the State points out that he experienced some notable lapses including a positive drug screen and trouble at school. The State asserts that it is simply unfair to suggest that the circuit court was influenced by the presence of Jamie C.'s parents at the final hearing. They did not participate in the hearing, and the court was already aware of their views concerning the case by virtue of their participation in prior proceedings involving the driver of the car.

█ W.Va.Code 49–5–13(b)(5) (1997) authorizes the circuit court to commit a juvenile to an industrial home "upon a finding that the best interests of the juvenile or the welfare of the public require it, and upon an adjudication of delinquency[.]" When a circuit court contemplates commitment to an industrial home, it is required to make a record and set forth its reasons for selecting that dispositional alternative. As we explained in Syllabus Point 4 of *State ex rel. D.D.H. v. Dostert*, 165 W.Va. 448, 269 S.E.2d 401 (1980):

> In a juvenile proceeding it is the obligation of a trial court to make a record at the dispositional stage when commitment to an industrial school is contemplated under

W.Va.Code, 49–5–13(b)(5) [1978] and where incarceration is selected as the disposition, the trial court must set forth his reasons for that conclusion. In this regard the court should specifically address the following: (1) the danger which the child poses to society; (2) all other less restrictive alternatives which have been tried either by the court or by other agencies to whom the child was previously directed to avoid formal juvenile proceedings; (3) the child's background with particular regard to whether there are pre-determining factors such as acute poverty, parental abuse, learning disabilities, physical impairments, or any other discrete, causative factors which can be corrected by the State or other social service agencies in an environment less restrictive than an industrial school; (4) whether the child is amenable to rehabilitation outside an industrial school, and if not, why not; (5) whether the dual goals of deterrence and juvenile responsibility can be achieved in some setting less restrictive than an industrial school and if not, why not; (6) whether the child is suffering from no recognizable, treatable determining force and therefore is entitled to punishment; (7) whether the child appears willing to cooperate with the suggested program of rehabilitation; and, (8) whether the child is so uncooperative or so ungovernable that no program of rehabilitation will be successful without the coercion inherent in a secure facility.

*See also* Syllabus, *In the Matter of Willis Alvin M.*, 198 W.Va. 210, 479 S.E.2d 871 (1996) (per curiam). In both *Dostert and Willis Alvin M.*, we stressed that it is important that the circuit court develop a record which " 'discloses conclusively that [it] has considered all relevant factual material and dispositional theories[ .]' " *Willis Alvin M.*, 198 W.Va. at 215, 479 S.E.2d at 876, *quoting Dostert*, 165 W.Va. at 471, 269 S.E.2d at 416. We also emphasized that " 'discretionary, dispositional decisions of the trial courts should only be reversed where they are not supported by the evidence or are wrong as a matter of law.' " *Id.*

In this case, the circuit court conducted not one, but three dispositional hearings in an effort to determine the most suitable dis-

positional alternative. It is apparent that the circuit court considered Thomas L.'s motion for probation and the plea agreement, but determined that other alternatives needed to be explored given the serious nature of the case and Thomas L.'s postadjudication behavior lapses. The circuit court acknowledged that although Thomas L. did not intend to cause the death of Jamie C., he, nonetheless, contributed to it. The transcripts from the dispositional hearings reveal a searching review and lengthy discussions by the circuit court with the probation officer regarding what alternatives were available including home confinement, community service, and group homes. The court also considered a psychological report from Steve Ferris, MA, and testimony from Thomas L.'s drug and alcohol counselor.

The circuit court was not unmindful of the progress Thomas L. had made during his drug and alcohol counseling. However, the court was concerned that if Thomas L. were placed in a group home in the community he "would be in the same situation as far as going to school, being able to contact friends, associates ... this would not really serve the ends of justice." Those concerns were very legitimate given the fact that Thomas L. tested positive during a drug screening shortly before the final dispositional hearing.

After reviewing the record, we find no evidence that the circuit court was unduly influenced by the presence of Jamie C.'s parents at the final hearing. This Court is of the opinion that the circuit court thoroughly explored all the dispositional alternatives in this case and gave appropriate consideration to Thomas L.'s efforts to reform his behavior. The circuit court acted properly within its sound discretion in committing Thomas L. to the Industrial Home. Accordingly, the final order of the Circuit Court of Mercer County is affirmed.

Affirmed.

Justice McGRAW did not participate in the decision of this case.