617 S.E.2d 517

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**KENNETH Y., Juvenile, Defendant Below, Appellant.**

No. 31742.

Supreme Court of Appeals of West Virginia.

Submitted: Jan. 12, 2005.

Decided March 22, 2005.

Opinion of Justice Davis April 7, 2005.

Elizabeth Shaver, Public Defender Corporation, Ripley, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Kelley M. Goes, Assistant Attorney General, Charleston, for the Appellee.

PER CURIAM.

This case is before this Court upon the July 31, 2003, order of the Circuit Court of

Jackson County, West Virginia, sentencing the appellant, Kenneth Y., a juvenile, to the Industrial Home for Youth near Salem, West Virginia, for a term not to exceed 1 year. The Circuit Court adjudicated the appellant to be a juvenile delinquent within the meaning of *W.Va.Code*, 49–1–4(8) (1998), upon the appellant's admission to the charge of destruction of property.[1]

The charge and adjudication of delinquency arose from an incident wherein the appellant damaged the automobile of Matthew D. Francis. The appellant does not challenge that aspect of the case. Rather, he contends that the Circuit Court abused its discretion in sentencing him to the Industrial Home for Youth. In that regard, the appellant asserts, *inter alia,* that the Circuit Court committed error by failing to afford him, or his counsel, an opportunity to comment upon alternative sentencing arrangements. According to the appellant, the sentence to the Industrial Home should, therefore, be set aside.

This Court has before it the petition for appeal, the briefs of the parties and all matters of record. As discussed below, *W.Va. Code*, 49–5–13 (2002), sets forth a number of alternative sentencing arrangements in cases of this nature, including the placement of a juvenile in a facility such as the Industrial Home for Youth. A review of the record herein supports the appellant's assertion that the Circuit Court did not afford him or his counsel an opportunity to comment upon those alternatives prior to his sentence to the Industrial Home. For the reasons stated below, this Court is of the opinion that that omission constitutes plain error. Accordingly, the July 31, 2003, order of the Circuit Court of Jackson County is set aside, and this case is remanded to that Court for re-sentencing with an opportunity to be provided to appellant for comment upon alternative sentencing arrangements.

## I.

### Factual and Procedural Background

On June 13, 2002, the appellant, Kenneth Y., age 16, engaged in a confrontation with Matthew D. Francis, age 18, concerning the appellant's girlfriend.[2] The confrontation occurred in a parking lot in Ravenswood, West Virginia. During the incident, the appellant kicked Francis' 1995 Ford Contour automobile, thereby damaging the vehicle in an amount in excess of $700.

A petition was filed in the Circuit Court of Jackson County, West Virginia, by the investigating police officer charging the appellant with destruction of property, i.e., damaging the Ford Contour, and asking the Court to adjudicate him a juvenile delinquent. *W.Va. Code*, 49–5–2 (2001); *W.Va.Code*, 49–5–7 (2003). The Jackson County Public Defender was appointed to represent the appellant. Pursuant to an order entered on January 3, 2003, the Circuit Court accepted the appellant's admission to the charge and adjudicated him a juvenile delinquent. *W.Va.Code*, 49–5–11 (1998).

The Circuit Court granted the appellant, who had dropped out of high school and had a history of delinquency, leave to attend the educational program at the Mountaineer Challenge Academy in Kingwood, West Virginia, pending final disposition.[3] The appellant attended the Academy for about 10 days but left without completing the program.

Thereafter, on July 31, 2003, the Circuit Court conducted a dispositional hearing pursuant to *W.Va.Code*, 49–5–13 (2002). Although the appellant did not testify at the hearing, his sister, Beverly Y., appeared and

---

1. The phrase "juvenile delinquent" is defined in *W.Va.Code*, 49–1–4(8) (1998), as a juvenile "who has been adjudicated as one who commits an act which would be a crime under state law or a municipal ordinance if committed by an adult." The unlawful destruction, injury or defacement of property is a criminal offense against the State of West Virginia pursuant to *W.Va.Code*, 61–3–30 (1975).

2. This Court follows its past practice in cases involving underage individuals and shall refer to the last name of the appellant by initials only. *In the Matter of Jonathan P.,* 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

3. The Mountaineer Challenge Academy, operated by the West Virginia Adjutant General, was designed to meet "the educational needs of at-risk youth." *W.Va.Code*, 15–1B–24 (2000). Specifically, the Academy provides a residential, education program in a quasimilitary environment for high school dropouts.

indicated, through her testimony, that the appellant should be placed on probation and allowed to reside with her. Jackson County Probation Officer John R. Mellinger, however, recommended that the appellant be sentenced to the Industrial Home for Youth. According to Officer Mellinger, confinement at the Industrial Home was warranted because of the appellant's (1) history of delinquency, (2) failure to pursue educational and employment opportunities, (3) failure to pay restitution in this case and (4) lack of exposure to discipline throughout his life.

Immediately following the statements of Beverly Y. and Officer Mellinger, the Circuit Court sentenced the appellant to the Industrial Home for Youth for a term not to exceed 1 year. In so ruling, the Circuit Court set forth a number of reasons why it was accepting Officer Mellinger's recommendation, a primary reason being the educational programs offered at the Industrial Home. It is apparent to this Court that the Circuit Court considered education to be of importance in the best interests of appellant. In imposing sentence, however, the Circuit Court did not afford the appellant or his counsel an opportunity to comment upon alternative sentencing arrangements.

The appellant's sentence to the Industrial Home for Youth is reflected in the order of July 31, 2003. In September 2003, the Circuit Court stayed the appellant's sentence pending appeal to this Court. *W.Va.Code,* 49–5–13(d) (2002).

## II.

### Discussion

■ As stated above, *W.Va.Code,* 49–5–13 (2002), sets forth a number of alternative sentencing arrangements in cases of this nature, including the placement of a juvenile in a facility such as the Industrial Home for Youth. Other options available under the statute range from dismissal of the delinquency petition to the referral of the juvenile to community-based programs or the placement of the juvenile under extra-parental supervision through the local probation office. In the case now to be determined, the appellant was sentenced to the Industrial Home pursuant to *W.Va.Code,* 49–5–13(b)(5) (2002), which states in part:

> Upon a finding that the best interests of the juvenile or the welfare of the public require it, and upon an adjudication of delinquency . . . the court may commit the juvenile to the custody of the Director of the Division of Juvenile Services for placement in a juvenile services facility for the treatment, instruction and rehabilitation of juveniles.

Subsection (b)(5) further provides that a circuit court "maintains discretion to consider alternative sentencing arrangements."

■ Accordingly, the standard of review with regard to a circuit court's sentencing order or disposition under *W.Va.Code,* 49–5–13 (2002), is whether the circuit court's ruling constitutes an abuse of discretion. *State v. Kirk N.,* 214 W.Va. 730, 741, 591 S.E.2d 288, 299 (2003), quoting *State ex rel. D.D.H. v. Dostert,* 165 W.Va. 448, 471, 269 S.E.2d 401, 416 (1980), ("discretionary" rulings of circuit courts at the dispositional stage in juvenile cases "should only be reversed where they are not supported by the evidence or are wrong as a matter of law"); *In the Interest of Thomas L.,* 204 W.Va. 501, 504, 513 S.E.2d 908, 911 (1998), (disposition in juvenile case held to be within the circuit court's "sound discretion"); *State ex rel. Department of Health and Human Resources v. Frazier,* 198 W.Va. 678, 683, 482 S.E.2d 663, 668 (1996), (circuit courts are "vested with discretion to select the appropriate disposition for a particular juvenile").[4]

■ Nevertheless, a number of factors suggest that an abuse of discretion occurs where no right of allocution or opportunity to comment on sentencing is afforded a juvenile

---

4. *See generally,* syl. pt. 1, *State v. Lucas,* 201 W.Va. 271, 496 S.E.2d 221 (1997): "The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. pt. 1, *State v. Watkins,* 214 W.Va. 477, 590 S.E.2d 670 (2003); syl. pt. 1, *State v. Richardson,* 214 W.Va. 410, 589 S.E.2d 552 (2003).

at the dispositional stage of the proceedings.[5] As *W.Va.Code*, 49–5–13(b) (2002), expressly states, a circuit court is required, in selecting an appropriate sentence, to consider "the best interests of the juvenile and the welfare of the public." Consistent with that requirement is the admonition of the West Virginia Legislature in *W.Va.Code*, 49–5–2(i) (2001), and again in *W.Va.Code*, 49–5–13(b) (2002), that the parties in a juvenile proceeding shall be given an "opportunity to be heard."[6] Moreover, a juvenile has the right under *W.Va.Code*, 49–5–2(h) (2001), to be "effectively represented" by counsel "at all stages" of the proceedings. Manifestly, the opportunity to he heard and the right to effective representation encompass the right to comment upon alternative sentencing arrangements as an integral part of the circuit court's mandate to consider the best interests of the juvenile and the welfare of the public.

■■■ Where sentencing to a facility such as the Industrial Home for Youth is contemplated, the opportunity to comment is *a fortiori* warranted, especially in view of the obligations of the sentencing court set forth in syllabus point 4 of *D.D.H. v. Dostert, supra:*

> In a juvenile proceeding it is the obligation of a trial court to make a record at the dispositional stage when commitment to an industrial school is contemplated under *W.Va.Code*, 49–5–13(b)(5) [1978] and where incarceration is selected as the disposition, the trial court must set forth his reasons for that conclusion. In this regard the court should specifically address the following: (1) the danger which the child poses to society; (2) all other less restrictive alternatives which have been tried ei-

ther by the court or by other agencies to whom the child was previously directed to avoid formal juvenile proceedings; (3) the child's background with particular regard to whether there are pre-determining factors such as acute poverty, parental abuse, learning disabilities, physical impairments, or any other discrete, causative factors which can be corrected by the State or other social service agencies in an environment less restrictive than an industrial school; (4) whether the child is amenable to rehabilitation outside an industrial school, and if not, why not; (5) whether the dual goals of deterrence and juvenile responsibility can be achieved in some setting less restrictive than an industrial school and if not, why not; (6) whether the child is suffering from no recognizable, treatable determining force and therefore is entitled to punishment; (7) whether the child appears willing to cooperate with the suggested program of rehabilitation; and, (8) whether the child is so uncooperative or so ungovernable that no program of rehabilitation will be successful without the coercion inherent in a secure facility.

Syl., *State v. Craig D.*, 205 W.Va. 269, 517 S.E.2d 746 (1998); syl., *In the Matter of Willis Alvin M.*, 198 W.Va. 210, 479 S.E.2d 871 (1996); syl. pt. 1, *State v. M.E.*, 170 W.Va. 367, 294 S.E.2d 171 (1982).[7]

■■■ By analogy, Rule 32(c)(3)(C) of the West Virginia Rules of Criminal Procedure states that, before imposing sentence, the court must "address the defendant personally and determine whether the defendant wishes to make a statement and to present

---

5. In *Bassett v. Commonwealth*, 222 Va. 844, 858–59, 284 S.E.2d 844, 853 (1981), *cert. denied*, 456 U.S. 938, 102 S.Ct. 1996, 72 L.Ed.2d 458 (1982), the Supreme Court of Virginia defined the right of allocution as "the defendant's right to speak on his own behalf after the fact finder determines guilt but before the judge pronounces sentence."

6. Pursuant to *W.Va.Code*, 49–5–2(i) (2001), a juvenile's opportunity to be heard: (1) applies to "all proceedings," (2) shall be "meaningful" and (3) "includes" the opportunity to testify and to present and cross-examine witnesses. Pursuant to *W.Va.Code*, 49–5–13(b) (2002), in conducting the dispositional hearing, the circuit court shall give all parties "an opportunity to be heard."

7. It should be noted that in March 2004, subsequent to the dispositional order in this case, a number of forms adopted by this Court concerning juvenile proceedings went into effect. One of the forms is entitled "Dispositional Order in Juvenile Delinquency Proceedings." Citing *W.Va. Code*, 49–5–13, the form includes the following statement: "Evidence was presented and the Court gave all parties and other interested persons the opportunity to present evidence and argument, upon all of which the following findings of fact and conclusions of law are based."

any information in mitigation of sentence[.]" [8] In *State v. Brewster*, 213 W.Va. 227, 579 S.E.2d 715 (2003), this Court indicated that Rule 32(c)(3)(C) is part of this State's "long-standing tradition" of conferring the right of allocution in criminal cases. 213 W.Va. at 229, 579 S.E.2d at 717. Thus, in syllabus point 6 of *State v. Berrill*, 196 W.Va. 578, 474 S.E.2d 508 (1996), this Court held: "In the circuit and magistrate courts of this state, the judge or magistrate shall, *sua sponte*, afford to any person about to be sentenced the right of allocution before passing sentence." Syl. pt. 5, *State v. Bruffey*, 207 W.Va. 267, 531 S.E.2d 332 (2000). *See*, Vol. 2, F.D. Cleckley, *Handbook on West Virginia Criminal Procedure*, 317–18 (Michie—1993). Certainly, the number of considerations, enumerated above, relevant to dispositional orders in juvenile proceedings justify a favorable comparison between affording a juvenile an opportunity to comment upon sentencing and the right of allocution under Rule 32(c)(3)(C).

■ Here, the State asserts that the appellant's right to be heard concerning his sentence was satisfied at the dispositional hearing by his sister's testimony to the effect that he should be placed on probation. In addition, the State asserts that the appellant waived the right to comment at the hearing by not requesting the opportunity to speak and by not objecting when the Circuit Court proceeded to impose the sentence. Nothing in the record, however, demonstrates that the sister's testimony was wholly reflective of the appellant's expectations concerning his sentence. More important, however, was the Circuit Court's failure to affirmatively provide an opportunity for the appellant or his counsel to give the Court their in-put concerning alternative sentencing arrangements. As stated above, a circuit court's duty in that regard is part of ruling in the best interests of the juvenile and the welfare of the public. The State's assertions are, therefore, deprived of significance by syllabus point 5 of *Berrill*, *supra*, which states: "Where no objection to the denial of allocution was made at trial, the error is subject to review for plain error." *Bruffey*, *supra*, 207 W.Va. at 273 n. 6, 531 S.E.2d at 338 n. 6. As stated in Vol. 2, F.D. Cleckley, *Handbook on West Virginia Criminal Procedure*, (Michie—2004 Supplement):

> Where no objection has been made to the denial of the right to allocution, the deprivation is nevertheless subject to review under plain error. * * * In light of the obligation that [Rule 32(c)(3)(C)] imposes upon the sentencing court to invite a defendant's allocution, it is not plain that a defendant should be held to have forfeited his or her right to allocution because of any failure to request that opportunity.

The record demonstrates that the Circuit Court did not afford the appellant or his counsel an opportunity to comment upon alternative sentencing arrangements at the dispositional hearing prior to the imposition of sentence to the Industrial Home for Youth. That omission constitutes plain error.[9]

---

**8.** Rule 54(b)(3) of the West Virginia Rules of Criminal Procedure states, in part, that "[e]xcept as expressly provided within these rules they do not apply to proceedings under Chapter 49, Article 5, Section 1, *et seq.* of the West Virginia Code of 1931, as amended, juvenile delinquency so far as they are inconsistent with that statute."

**9.** In addition, the appellant contends that the Circuit Court committed error by not setting forth findings of fact and conclusions of law in sentencing him to the Industrial Home. As indicated above, however, a reading of the transcript of the dispositional hearing reveals that the Circuit Court set forth a number of reasons why it was accepting Officer Mellinger's recommendation. Specifically, the Court explained why it could not justify placing the appellant on probation, and the Court emphasized the educational opportunities, needed by the appellant, which were available under the authority of the Division of Juvenile Services.

Moreover, the appellant contends that his sentence to the Industrial Home is invalid because no multidisciplinary team was convened in the case as required by *W.Va.Code*, 49–5D–1(1998), *et seq.* However, in addition to the prosecutor and appellant's counsel, those present at various stages of the proceedings included Officer Mellinger, the appellant's mother and Amy Bain of the West Virginia Department of Health and Human Resources. Nevertheless, the record is not sufficiently developed on this issue for purposes of review. In light of the remanding of this case for resentencing, further development of the record can be made at the circuit court level concerning the presence or absence of a multidisciplinary team.

## III.

### Conclusion

This Court has stated that, where a sentencing court has failed to grant a defendant the right of allocution, the appropriate remedy is to remand the case to the circuit court for resentencing. *State v. West,* 197 W.Va. 751, 753, 478 S.E.2d 759, 761 (1996). Accordingly, the July 31, 2003, order of the Circuit Court of Jackson County is set aside, and this case is remanded to that Court for resentencing with an opportunity to be provided the appellant for comment upon alternative sentencing arrangements.

Remanded for Resentencing

Justice DAVIS concurs and files a concurring opinion.

DAVIS, J., concurring:

(Filed April 7, 2005)

In this proceeding, the juvenile contended that he was denied the right to allocution during the dispositional phase of his prosecution. The majority opinion agreed with the juvenile, reversed the dispositional order of the trial court, and remanded the case for a new dispositional hearing to permit the juvenile to exercise his right to allocution. I fully concur in the resolution of this issue. I have chosen to write separately to clarify another issue that will be addressed on remand; the use of a multidisciplinary team in juvenile delinquency proceedings.

### *The Use of a Multidisciplinary Team in Juvenile Delinquency Proceedings Is Statutorily Limited*

One of the issues raised by the juvenile in this case was that he had a statutory right to have a multidisciplinary team participate in the dispositional phase of his prosecution.

The State argued that, under the facts of this case, there was no statutory right to have a multidisciplinary team involved. The majority disposed of this issue in footnote 9 of the opinion by remanding the issue for further development. I do not disagree with remanding this issue, but I believe the majority opinion should have gone further and provided some guidance to the trial court in light of the broad language used in Syllabus point 3 of *E.H. v. Matin,* 201 W.Va. 463, 498 S.E.2d 35 (1997).

In *Matin,* a juvenile was found delinquent, placed in the custody of the Department of Health and Human Resources (hereinafter referred to as "DHHR"), and sentenced to an out-of-state facility. The case came to this Court on certified questions, one of which asked whether the use of a multidisciplinary team was statutorily mandated under the facts of the case. The *Matin* Court answered the question in the affirmative, and in so doing set out the following in Syllabus point 3: "The language of W. Va.Code § 49–5D–3 is mandatory and requires the Department of Health and Human Resources to convene and direct treatment teams not only for juveniles involved in delinquency proceedings, but also for victims of abuse and neglect." Viewed under the facts presented in *Matin,* Syllabus point 3 of that opinion is sound. However, that syllabus point was not intended to be as broad as its language implies because W. Va.Code § 49–5D–3 imposes limitations on the use of multidisciplinary teams in juvenile delinquency proceedings.

The relevant language of the statute is found in W. Va.Code § 49–5D–3(a)(2) (2004) (Repl. Vol. 2004), which reads as follows:

> Treatment teams shall assess, plan and implement a comprehensive, individualized service plan ... for juveniles and their families involved in ... delinquency proceedings *when ... the court is considering*

Finally, the appellant contends that the Circuit Court made an unfair inference that he acted unreasonably in not completing the program at the Mountaineer Challenge Academy where the State submitted no evidence on that point. A review of the transcript of the dispositional hearing, however, reveals that, inasmuch as comments were made during the testimony of the appellant's sister that the appellant was not used to the discipline he experienced at the Academy, the Court's inference was not unfair and does not reach the level of reversible error.

*placing the juvenile in the department's custody or placing the juvenile out-of-home at the department's expense* pursuant to the provisions of section thirteen of said article. In any such ... delinquency case, the juvenile probation officer shall notify the local office of the department of health and human resources and the division of juvenile services at least five working days before the court proceeding in order to allow the multidisciplinary treatment team to convene and develop a comprehensive individualized service plan for the child.

Plainly then, under W. Va.Code § 49–5D–3(a)(2), the use of a multidisciplinary team is mandatory in a juvenile delinquency proceeding only when the court is considering (1) placing the juvenile in DHHR's custody, or (2) placing the juvenile out-of-home at DHHR's expense. Although we may question the wisdom of limiting the use of multidisciplinary teams to only these two situations, "[o]ur job is not to weigh the wisdom of ... a statute." *West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.,* 196 W.Va. 326, 339, 472 S.E.2d 411, 424 (1996). *Accord State ex rel. City of Charleston v. Bosely,* 165 W.Va. 332, 352 n. 3, 268 S.E.2d 590, 601 n. 3 (1980) (Neely, C.J., dissenting) ("Courts cannot be concerned with legislative policy or the mere wisdom or lack of wisdom of the statute in question."). The Legislature has spoken in clear and unambiguous terms in limiting the use of multidisciplinary teams in delinquency proceedings. Consequently, the trial court's inquiry into this issue on remand must be guided by the statutory restrictions imposed on the use of multidisciplinary teams.

In view of the foregoing, I concur.