# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2014 Term

_____

No. 13-0890

_____

FILED

**March 27, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

V.

J.S.,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Barbour County
Honorable Alan D. Moats, Judge
Juvenile Delinquency Nos. 13-JD-01 and 13-JD-11

AFFIRMED

_____

Submitted: February 19, 2014
Filed: March 27, 2014

Phillip S. Isner
Curnutte Law Offices
Elkins, West Virginia
and
Angieszka Collins
Keyser, West Virginia
Attorneys for Petitioner

Patrick Morrisey
Attorney General
Julie A. Warren
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent

CHIEF JUSTICE DAVIS delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      When a juvenile is taken into custody for violating the terms of a post-adjudicatory home confinement order, he or she must be promptly brought before a circuit court for a summary hearing as required by W. Va. Code § 62-11B-9 (2013) (Supp. 2013) and W. Va. Code § 62-12-10 (2013) (Supp. 2013).

2.      "There is a presumption of regularity of court proceedings that remains until the contrary appears, and the burden is on the person who alleges such irregularity to show it affirmatively; and where an order of a court of record is merely silent upon any particular matter, it will be presumed, notwithstanding such silence, that such court performed its duty in every respect as required by law[.]"  Syllabus, in part, *State ex rel. Smith v. Boles*, 150 W. Va. 1, 146 S.E.2d 585 (1965).

3.      "To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." Syllabus point 2, *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996).

4.      At a juvenile disposition hearing, a circuit court may consider all information contained in a diagnostic evaluation that was performed pursuant to Rule 40 of the West Virginia Rules of Juvenile Procedure.

5.    "In a juvenile proceeding it is the obligation of a trial court to make a record at the dispositional stage when commitment to an industrial school is contemplated under W. Va. Code, 49-5-13(b)(5) [2012] and where incarceration is selected as the disposition, the trial court must set forth his reasons for that conclusion.  In this regard the court should specifically address the following: (1) the danger which the child poses to society; (2) all other less restrictive alternatives which have been tried either by the court or by other agencies to whom the child was previously directed to avoid formal juvenile proceedings; (3) the child's background with particular regard to whether there are pre-determining factors such as acute poverty, parental abuse, learning disabilities, physical impairments, or any other discrete, causative factors which can be corrected by the State or other social service agencies in an environment less restrictive than an industrial school; (4) whether the child is amenable to rehabilitation outside an industrial school, and if not, why not; (5) whether the dual goals of deterrence and juvenile responsibility can be achieved in some setting less restrictive than an industrial school and if not, why not; (6) whether the child is suffering from no recognizable, treatable determining force and therefore is entitled to punishment; (7) whether the child appears willing to cooperate with the suggested program of rehabilitation; and, (8) whether the child is so uncooperative or so ungovernable that no program of rehabilitation will be successful without the coercion inherent in a secure facility."  Syllabus point 4, *State ex rel. D. D. H. v. Dostert*, 165 W. Va. 448, 269 S.E.2d 401 (1980).

6.	A circuit court's failure to advise a juvenile delinquent of his or her right to appeal after a disposition proceeding is sufficient grounds for relief only when the juvenile is prejudiced by the court's error.

**Davis, Chief Justice:**

This is an appeal by J.S., a juvenile,[1] from an order of the Circuit Court of Barbour County adjudicating him as a delinquent for burglary and battery under two separate juvenile petitions and placing him in a level four juvenile detention facility until he reaches the age of twenty-one. In this appeal, J.S. contends that the circuit court erred because it (1) failed to hold a detention hearing on the burglary petition and a preliminary hearing on the battery petition; (2) overlooked the requirement to enter a timely adjudicatory order on the burglary petition; (3) considered improper hearsay evidence at the disposition hearing; (4) neglected to commit him to the least restrictive placement; (5) failed to advise him of his right to appeal; and (6) declined to schedule a review hearing. After a careful review of the briefs, the record submitted on appeal, and listening to the argument of the parties, we affirm.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

Around 3:30 p.m., on December 14, 2012, J.S. unlawfully entered a side door to the garage of Michael and Cindy Chevechko's home in Belington, West Virginia.[2] After J.S. entered the garage, he spent several minutes trying to break open a door that led to the

---

[1]Because the petitioner is a juvenile, we follow our usual practice of using only the initials of his name.

[2]J.S. was seventeen years old at the time.

inside of the home. Mrs. Chevechko was at home alone and heard the noise in her garage.[3]

Mrs. Chevechko locked herself in her bathroom and, at some point, telephoned her mother for help. Mrs. Chevechko's mother drove to the home and confronted J.S.[4] After being confronted by Mrs. Chevechko's mother, J.S. left the home without further incident.

A juvenile petition charging J.S. with burglary was filed on January 18, 2013. The circuit court entered an order on the same day appointing counsel for J.S. and setting a preliminary hearing for February 11, 2013. The preliminary hearing was convened as scheduled. However, at the hearing, J.S.'s attorney informed the circuit court that J.S. was "prepared to waive the preliminary hearing . . . and proceed to adjudication and admit the allegations contained in the petition." The circuit court thereafter extensively questioned J.S. as to the voluntariness of his decision to admit to the allegations in the petition and informed him of his right to trial by jury and other rights.[5] J.S. stated that his admission to the allegations in the petition was voluntary and that he understood his rights and the consequences of giving up those rights. J.S. described to the circuit court his conduct in breaking into the garage and his attempt to enter the home.[6] J.S. stated that he was trying to

---

[3]Mrs. Chevechko's husband and their two children were not at home.

[4]Mrs. Chevechko's two children were with her mother when she arrived.

[5]*See* W. Va. R. Juv. P. 28 (adjudication by admission).

[6]Mrs. Chevechko's home was on the same road as J.S.'s home. J.S. did not
(continued...)

2

get into the home to steal alcohol to take to a party. J.S. admitted to being on a prescription pain pill called hydrocodone at the time of the burglary.[7] The circuit court then asked J.S.'s parents about his behavior.[8] The circuit court was informed that J.S. (1) smoked marijuana;[9] (2) was truant from school for a month and a half when he was in the eighth grade; (3) got into trouble for fighting another student in his freshman year at high school; (4) was expelled from school in his sophomore year for exposing himself; and (5) lost his drivers' license allegedly because of a speeding ticket and driving without a seatbelt.

At the conclusion of the hearing, the circuit court indicated that it was concerned about whether J.S. should be in a detention facility pending the dispositional hearing. The circuit court ultimately decided to allow J.S. to be placed on home confinement with his parents. J.S. was told that he could go to school but that he was not allowed to go anywhere else without his parents. J.S. was placed under the supervision of the circuit court's probation department. The circuit court informed J.S. that if he violated the

---

[6](...continued)
know the Chevechko family.

[7]J.S. informed the circuit court that he purchased the drug from a student at school and that he had been taking the drug for about four months.

[8]J.S.'s mother is a nurse, and his father is a self-employed co-owner of a motorcycle and ATV dealership.

[9]His parents denied having previous knowledge that he took unlawful prescription pills.

3

conditions for home confinement, he would be placed in a detention facility pending the final disposition hearing. The circuit court ordered a psychological, drug, and family assessment be performed while the case was pending. Thereafter, the circuit court entered a Preliminary/Adjudicatory Hearing order on February 27, 2013.

Also on February 27, 2013, the prosecutor filed a second juvenile petition against J.S. The second petition charged J.S. with committing a battery against a high school student on February 21, 2013, only ten days after the adjudicatory hearing on the burglary charge. After the petition was filed, the circuit court entered an order on the same day setting a preliminary hearing for March 22, 2013. The order also appointed J.S. the same counsel that represented him in the burglary case. In a separate order entered under the burglary case, the circuit court ordered J.S. be removed from his parents' home and placed in detention pending the disposition hearing in the burglary case.

On June 7, 2013, the circuit court held a joint adjudicatory hearing in the battery case and a disposition hearing in the burglary case.[10] The victim in the battery case,

_____

[10]At the joint hearing, J.S. was represented by a new attorney. The new counsel was retained by J.S.'s parents for the burglary charge. The new counsel had entered a notice of appearance in the burglary case. During the joint hearing, the new attorney indicated he also was representing J.S. on the battery charge and would be entering a notice of appearance in that case. The circuit court inquired of new counsel if he needed additional time to prepare for the battery case. Counsel responded that "I certainly would appreciate additional time (continued...)

4

C.B., testified at the hearing. The victim stated that J.S. locked him in a closet at school by tying a rope around the door. The victim was able to cut through the rope. After the victim got out of the closet, J.S. hit him in the knee with a shovel and punched him in the groin. The victim also indicated that "earlier in the year [J.S.] poured brake cleaner on me and poured kitty litter in my hair, coat and pants pockets." In response to questioning by the circuit court, the victim stated that, during his freshman and sophomore years, J.S. would "usually come up to me every day and hit me or something." The victim stated that he did not report the bullying incidents to anyone. J.S. also testified during the battery proceeding. J.S. stated that he and another unnamed student lured C.B. into the closet as a prank. According to J.S., several students, including J.S., had been locked in the closet as a prank on the day that C.B. was locked in the closet. J.S. also testified that C.B. walked up to him after getting out of the closet and that he extended his hand in friendship to C.B., but C.B. grabbed his hand and twisted his thumb. J.S. stated that he struck C.B. in an effort to get him to release his thumb. J.S. denied bullying C.B. At the conclusion of J.S.'s testimony, counsel for both parties presented closing arguments. After listening to the same, the circuit court stated:

> THE COURT: Thank you. Having considered the matter and observing the witnesses and considering the story the Court finds the testimony of [C.B.] to be credible and compelling and the Court finds the testimony of [J.S.] to be not credible and not compelling.

---

[10](...continued)
but I am prepared to go forward with 13-JD-11 today."

This is a classic case of bullying. And when the Court observes this, you have [C.B.] who is a special education student, not nearly as articulate as [J.S.] Just from looking at them it's apparent that they lived in different worlds although they went to the same school. And it's apparent what was going on, that [J.S.] was bullying [C.B.] on a regular basis and had done so since they started school together. . . .

The Court finds proof beyond a reasonable doubt that [J.S.] committed battery against [C.B.] and the Court finds that he is a juvenile delinquent as a result.

After concluding the battery adjudication portion of the proceeding, the circuit court then conducted the disposition hearing for the previously adjudicated burglary charge. During the disposition hearing, the prosecutor informed the circuit court that a diagnostic evaluation was performed on J.S. by a multi-disciplinary team ("MDT")[11] while he was confined at the Donald R. Kuhn Center.[12] The MDT recommended J.S. be placed at the Rubenstein Center, because of the bullying behavior he exhibited at the Kuhn Center.[13] However, the Rubenstein Center refused to accept J.S. as a result of his bullying behavior. Consequently, the prosecutor recommended J.S. be confined in a secure detention facility. Counsel for J.S. requested the circuit court place J.S. with the Elkins Mountain School, a

[11]*See* W. Va. R. Juv. P. 35 & 36.

[12]J.S. was confined at the Kuhn Center after he was removed from his parents' home.

[13]The Rubenstein Center is a level three minimum security juvenile correctional facility.

6

lesser restricted facility. J.S. and his parents also requested that he be placed with Elkins

Mountain School. The circuit court determined, based upon all the circumstances involved

in the case, that J.S. should be confined in a secure "level 4" detention facility until he

reached twenty-one years of age.[14] The circuit court also held that the disposition for the

battery case was to run concurrently with the disposition in the burglary case. This appeal

followed.

## II.

## STANDARD OF REVIEW

In this proceeding, J.S. elected not to have a jury decide adjudication issues.

Thus, the circuit court conducted a bench proceeding to decide both the adjudication and

disposition. In this regard, our standard of review is as follows:

> "In reviewing challenges to the findings and conclusions
> of the circuit court made after a bench trial, a two-pronged
> deferential standard of review is applied. The final order and
> the ultimate disposition are reviewed under an abuse of
> discretion standard, and the circuit court's underlying factual
> findings are reviewed under a clearly erroneous standard.
> Questions of law are subject to a *de novo* review." Syllabus
> point 1, *Public Citizen, Inc. v. First National Bank in Fairmont*,
> 198 W. Va. 329, 480 S.E.2d 538 (1996).

Syl. pt. 1, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006). *See State v. Kenneth*

---

[14]A level four facility is a maximum security juvenile facility. The circuit court stated on the record that it was not sure what facility was now called a level four facility, since the facility in Salem, West Virginia, was discontinued as a level four facility.

*Y.*, 217 W. Va. 167, 170, 617 S.E.2d 517, 520 (2005) ("[T]he standard of review with regard to a circuit court's sentencing order or disposition under *W. Va. Code*, 49–5–13 (2002), is whether the circuit court's ruling constitutes an abuse of discretion." (citations omitted). Applying these standards to the present case, we now consider the substantive issues raised by J.S. on appeal to this Court.

## III.

## DISCUSSION

The brief submitted by counsel for J.S.[15] is incoherent.[16] It sets out six assignments of error. The first five assignments of error argue no legal authority and merely restate procedural facts. The brief combined assignments of error one, two, three, and four. At the conclusion of assignment of error five, the brief sets out a thirteen-page section[17] that contains numerous disconnected procedural issues.[18] To the extent possible, we have used

---

[15]While this appeal was pending, a new attorney was substituted to argue the case on behalf of J.S.

[16]The State has not attempted to address the unorganized and poorly-briefed assignments of error. Instead, the State's brief sets out a legal analysis as to why it was proper for the circuit court to place J.S. in a level four facility. Ordinarily, this Court would find the State's brief to be non-responsive to the issues raised. However, we understand the State's inability to find a properly-briefed assignment of error.

[17]The section is entitled: Error Based on Violations of the Code, Rules and Case Law.

[18]Some of the issues randomly set out in this section of the brief include: (1)
(continued...)

8

some of the issues set out under this section of the brief to supplement the inadequately briefed assignments of error.

### A.  *Failure to Hold Detention/Preliminary Hearing*

The first issue assigned as error by J.S. is that the circuit court failed to hold a detention hearing in the burglary case and a preliminary hearing in the battery case.  We reject this assignment of error for several reasons.

---

[18](...continued)
the evidence was insufficient to support the battery adjudication; (2) the trial judge was biased in the battery adjudication; (3) the adjudicatory order in the battery case was not timely entered; (4) J.S. was not admitted to bail on the battery petition; (5) J.S.'s parents did not receive the petition in the battery case until a week after it was filed; and (6) no detention hearing was held on the battery charge.  None of these issues were set out as assignments of error. J.S.'s brief has combined these issues under a heading that was not listed as an assignment of error.  West Virginia Rule of Appellate Procedure 10(c)(3) requires the petitioner to list  all assignments of error presented for review, and Rule 10(c)(7) requires assignments of error be accompanied by "an argument exhibiting clearly the points of fact and law presented . . . citing the authorities relied on[.]"  None of this was done. Compounding the problem of not listing these issues as assignments of error, the issues raised in this section of the brief were inadequately briefed for consideration by this Court. "Typically, this Court will not address issues that have not been properly briefed." *State v. White*, 228 W. Va. 530, 541 n.9, 722 S.E.2d 566, 577 n.9 (2011).  Indeed, we have repeatedly cautioned that "casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal." *State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) (internal quotations and citation omitted). *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but [which] are not supported with pertinent authority, are not considered on appeal."); *State, Dep't of Health & Human Res., Child Advocate Office v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) ("[A] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim[.]" (internal quotations and citations omitted)).

9

**1. Issues waived.** First, neither issue under this assignment of error was raised below, and, therefore, both issues are waived. In *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996), this Court explained as follows:

> Our cases consistently have demonstrated that, in general, the law ministers to the vigilant, not to those who sleep on their rights. . . . When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial . . . he or she ordinarily must object then and there or forfeit any right to complain at a later time. The pedigree for this rule is of ancient vintage, and it is premised on the notion that calling an error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs.

*LaRock*, 196 W. Va. at 316, 470 S.E.2d at 635. J.S. has failed to cite to anything in the record that demonstrates an objection to the lower court's failure to hold a detention hearing in the burglary case or a preliminary hearing in the battery case. To the extent that it was proper to hold such hearings, J.S. should have timely brought the matter to the circuit court's attention and/or filed a timely petition for extraordinary relief with this Court to have such proceedings take place.

**2. Detention hearing.** J.S. contends that Rules 6, 12 and 13 of the West Virginia Rules of Juvenile Procedure required the circuit court to hold a detention hearing before confining him for committing the battery against C.B. However, the rules relied upon

10

by J.S. were not applicable to his post-adjudication burglary detention.[19]  As mentioned

earlier in this opinion, after J.S. was adjudicated a delinquent on the burglary charge, the

circuit court released him to his parents on home confinement pending the disposition

hearing.  The circuit court entered an order removing J.S. from his parents' home after he

was charged with battery.  However, this detention order was based upon the circuit court's

determination that J.S. violated the terms of his release under the burglary adjudication.  The

basis for the detention was clearly outside the scope of Rules 6, 12 and 13.  In fact, there is

no specific rule under the West Virginia Rules of Juvenile Procedure that addresses the issue

of holding a detention hearing before placing a juvenile in detention for violating the terms

of post-adjudicatory release.[20]

As a practical matter, J.S.'s post-adjudicatory release was analogous to that of

---

[19]Under Rule 6(c), a detention hearing is required whenever a juvenile is taken into custody under a court order that is based upon the filing of a juvenile petition or taken into custody without a court order.  Rule 12 sets out the types of detention that may be imposed upon a juvenile generally, but does not set out any provision addressing the issue of a pre-detention hearing.  Rule 13 addresses the issue of pre-adjudicatory detention.

[20]During oral argument, counsel for J.S. and counsel for the State appeared confused as to whether J.S.'s post-adjudicatory release was in fact a probation.  Obviously the post-adjudicatory release was not probation.  The circuit court is authorized to place a juvenile on probation after a disposition hearing. *See* W. Va. R. Juv. P., Rule 39(e).  Part of the confusion appears to have been caused by language in the adjudicatory order that refers to supervision by a probation officer.  This supervision was not the result of being placed on probation.  The supervision was based upon J.S.'s release to his parents pending the disposition hearing.  If J.S. had been placed on probation, he would have been entitled to a revocation hearing under Rule 47 of the West Virginia Rules of Juvenile Procedure.

11

releasing an adult defendant on bail, with home confinement as a condition, while awaiting sentencing. This situation would invoke the Home Confinement Act. *See* W. Va. Code § 62-11B-1 *et seq.* It is expressly provided under the Act that home confinement may be imposed as a condition of bail. *See* W. Va. Code § 62-11B-4(a) (2005) (Repl. Vol. 2010). Moreover, the Act is applicable to a juvenile who has committed an act that would be a crime if committed by an adult. *See* W. Va. Code § 62-11B-2 (1994) (Repl. Vol. 2010). Under W. Va. Code § 62-11B-9(a) (2013) (Supp. 2013) of the Act, if a person violates a term of a court's home incarceration order, he or she is subject to the procedures and penalties under W. Va. Code § 62-12-10 (2013) (Supp. 2013). For purposes of the discussion here, W. Va. Code § 62-12-10(a) states that a person arrested for violating a release order "shall be brought before the court . . . for a prompt and summary hearing."

Although the circuit court did not set out the authority for placing J.S. on home confinement after the adjudication of the burglary charge, we find that the most convenient authority is the Act. *See Beane v. Dailey*, 226 W. Va. 445, 447, 701 S.E.2d 848, 850 (2010) ("We are not bound by the label[s] employed below, and will treat [matters] made pursuant to the most appropriate rule." (internal quotations and citations omitted)). In recognition of this fact, we now hold that when a juvenile is taken into custody for violating the terms of a post-adjudicatory home confinement order, he or she must be promptly brought before a circuit court for a summary hearing as required by W. Va. Code § 62-11B-9 (2013)

(Supp. 2013) and W. Va. Code § 62-12-10 (2013) (Supp. 2013).

From the record in this case, it is clear that J.S. was not promptly taken before the circuit court for a hearing on his violation of the terms of his release. J.S. argues that, because of the denial of the hearing, he should now be released from custody. We disagree. For the reasons set out at the conclusion of this section, we find this error to have been harmless.

**3. Preliminary hearing.** J.S. also complains that a preliminary hearing was not held in the battery case. This issue has been brought disingenuously as an assignment of error. The limited record submitted in this case clearly shows that, after the juvenile petition for battery was filed against J.S., the circuit court entered an order appointing counsel and setting a date for a timely preliminary hearing on the charge. In this appeal, it is now contended that the preliminary hearing did not occur on the date set out in the order. The attorney representing J.S. on the date for the preliminary hearing is not the attorney presently representing him before this Court. The brief in this case indicates that the preliminary hearing was cancelled for reasons that are not known. The brief also states that "[i]f his prior Counsel agreed to [waive the hearing], it is not in the record and J.S. did not consent to the waiver."

Rule 18(a) of West Virginia Rules of Juvenile Procedure expressly states that a preliminary hearing may be "waived by the juvenile after being advised by counsel." Although the record submitted by J.S. is silent on the reason for the preliminary hearing not taking place, there is a presumption that cases proceed consistently with the requirements of the law:

> There is a presumption of regularity of court proceedings that remains until the contrary appears, and the burden is on the person who alleges such irregularity to show it affirmatively; and where an order of a court of record is merely silent upon any particular matter, it will be presumed, notwithstanding such silence, that such court performed its duty in every respect as required by law[.]

Syl., in part, *State ex rel. Smith v. Boles*, 150 W. Va. 1, 146 S.E.2d 585 (1965). Under the presumption of regularity of court proceedings, the preliminary hearing was held as scheduled in the circuit court's order, or the hearing was properly waived. J.S. has not overcome the presumption of regularity in the proceedings by merely professing ignorance as to why the preliminary hearing was not held. *See Allen v. State*, 871 P.2d 79, 99 (Okla. Crim. App. 1994) ("Further, there is a presumption of regularity in the trial court proceedings, and Appellant has failed to provide any evidence to rebut the presumption[.]"); *Dillard v. State*, No. 05-00-01745-CR, 2002 WL 31845796, at*5 (Tex. App. Dec. 20, 2002) ("Appellant's testimony that he did not receive prior notice of the hearing on the protective order is not sufficient to rebut the presumption of regularity of the order.").

**4. Harmless error.** Finally, even if we assume that J.S. was wrongfully denied a preliminary hearing and a detention hearing, he has failed to demonstrate any prejudice from such errors. We have long held that "where a nonconstitutional error has been asserted . . . the case will not be reversed unless the error is prejudicial to the defendant." *State v. Atkins*, 163 W. Va. 502, 510, 261 S.E.2d 55, 60 (1979) (citations omitted). *See State v. Potter*, 197 W. Va. 734, 748, 478 S.E.2d 742, 756 (1996) ("Our cases consistently have held that nonconstitutional errors are harmless unless the reviewing court has grave doubt as to whether the [error] substantially swayed the verdict."). J.S. has not alleged that specific evidence was improperly used against him as a direct result of the alleged wrongful denial of a detention and preliminary hearing. In *State v. Guthrie*, 194 W. Va. 657, 684, 461 S.E.2d 163, 190 (1995), we explained that, "[a]s to error not involving the erroneous admission of evidence, we have held that nonconstitutional error is harmless when it is highly probable the error did not contribute to the judgment." Clearly, the alleged failures now being considered did not contribute to the determination that J.S. committed burglary and battery.

### B. *Failure to Enter a Timely Adjudicatory Order in the Burglary Case*

In his second assignment of error, J.S. argues that the circuit court failed to enter a timely adjudicatory order in the burglary case. As previously noted, the brief has combined this issue with the first assignment of error. As a result of combining the two

15

assignments of error, the brief does not set out any coherent legal argument on the second assignment of error. The best that we are able to understand regarding this issue is that, because a timely adjudicatory order on the burglary charge was not entered, J.S. did not know that committing a battery against C.B. would result in his immediate detention.

The time in which an adjudicatory order should be entered is governed by Rule 33 of the West Virginia Rules of Juvenile Procedure. Rule 33 states, in relevant part:

> Within seven days of the conclusion of the adjudication hearing, the court shall issue an order stating its findings that the allegations in the petition have . . . been proven. Findings may be made on the record at the conclusion of the adjudicatory hearing, but must be followed up in writing within the seven days. For good cause, the court may extend the time for filing written findings for an additional seven days.

A basic rule of statutory construction provides that "'[w]hen a statute [or rule] is clear and unambiguous and the [drafter's] intent is plain, the statute [or rule] should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute [or rule].'" *Snider v. Fox*, 218 W. Va. 663, 667, 627 S.E.2d 353, 357 (2006) (quoting Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W. Va. 137, 107 S.E.2d 353 (1959)).

Rule 33 is clear and unambiguous. The rule mandates that an adjudicatory order be entered within seven days of the conclusion of an adjudicatory hearing. The rule

16

gives a trial judge discretion, for good cause shown, to extend the seven days limitation for an additional seven days.[21] In the instant case, the adjudicatory order was not filed within the time periods allowed under Rule 33.

On February 11, 2013, a scheduled preliminary hearing turned into an adjudication hearing as a result of J.S.'s voluntary decision to admit to the burglary charge. The circuit court entered an adjudication order on the burglary charge on February 27, 2013. Under these facts, the adjudication order was not in compliance with Rule 33 because it was not entered until sixteen days after the adjudication hearing. J.S. now argues that he should be released from confinement because of this technical error in not timely filing the adjudicatory order in the burglary case. We reject this contention for three reasons.

First, J.S. has failed to point to anywhere in the record where he raised this issue with the circuit court. The failure to timely raise the issue below has resulted in waiver of the matter in this appeal. As previously noted in this opinion, "[t]o preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." Syl. pt. 2, *State ex rel. Cooper v. Caperton*,

---

[21]The West Virginia Rules of Juvenile Procedure do not have a provision for computing time. The analogous rules, the West Virginia Rules of Criminal Procedure, address the issue of computation of time in Rule 45. It is provided under Rule 45(a) that "[w]hen a period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation."

196 W. Va. 208, 470 S.E.2d 162 (1996). *See LaRock*, *supra*; *State v. Miller*, 194 W. Va. 3, 17, 459 S.E.2d 114, 128 (1995) ("[T]he failure of a litigant to assert a right in the trial court likely will result in the imposition of a procedural bar to an appeal of that issue." (internal quotations and citation omitted)). Second, J.S. could not have been surprised by the detention. The record is clear: the trial judge informed J.S. during the burglary adjudicatory hearing several times that, in essence, if he got into trouble before the disposition hearing was held, the circuit court would "put him in a secure detention center until [the court received] the evaluations and have [sic] a final disposition hearing." Third, even if the issue was properly before this Court, J.S. has failed to show any prejudice from the late filing of the adjudicatory order. J.S.'s detention had no impact on the ultimate disposition of the burglary charge. Further, the detention did not impact the adjudication and disposition of the battery charge. Without any showing of prejudice from the detention, the error in not filing a timely adjudicatory order was harmless.

### *C. Consideration of Hearsay at the Disposition Hearing*

The third issue raised by J.S. is that the circuit court committed error in considering hearsay at the disposition hearing. As previously noted, the brief has combined this issue with the fourth assignment of error. As a result of combining the two assertions of error, the brief is not concise in its legal argument on the third assigned error. The best that we are able to discern from the argument is that information contained in J.S.'s

18

diagnostic evaluation should not have been considered by the circuit court at the disposition hearing. Specifically, it appears J.S. is contending that the circuit court should not have considered information in the diagnostic evaluation that indicated he bullied other juveniles while in detention. We reject this argument for two reasons.[22]

First, Rule 34 of West Virginia Rules of Juvenile Procedure sets out general guidelines for holding a disposition hearing. The rule does not, however, address the issue of what type of evidence may be considered at a disposition hearing. In the context of the analogous criminal sentencing hearing, we have recognized that "[a] trial court has wide discretion in the sources and types of evidence used in determining the kind and extent of punishment to be imposed." *State ex rel. Dunlap v. McBride*, 225 W. Va. 192, 202, 691 S.E.2d 183, 193 (2010) (internal quotations and citation omitted). We have noted that "the rules of evidence . . . do not strictly apply at sentencing hearings." *State v. Skidmore*, 228 W. Va. 166, 174, 718 S.E.2d 516, 524 (2011) (internal quotations and citation omitted). In fact, Rule 1101(b)(3) of the West Virginia Rules of Evidence expressly holds that those rules

_____

[22]Although J.S. has contended that the diagnostic evaluation contained inadmissible information, J.S. intentionally failed to submit the evaluation as part of the record on appeal. J.S. indicated in his brief that the evaluation was not submitted on appeal "because he did not have effective assistance of Counsel during the time that he was improperly detained without a hearing and subjected to the intrusive evaluation." This argument makes little sense and would normally lead to a waiver of the issue outright. However, because the State has supplemented the record by submitting the evaluation for consideration in this appeal, the issue has not been waived.

do not apply to sentencing proceedings. "The primary effect of Rule 1101(b) is to loosen the prohibition against the use of hearsay evidence in certain situations and proceedings." Franklin D. Cleckley, Louis J. Palmer, Jr. and Robin Jean Davis, Vol. 2 *Handbook on Evidence for West Virginia Lawyers*, § 1110.02[2] (2012). *See State v. McLaughlin*, 226 W. Va. 229, 240, 700 S.E.2d 289, 300 (2010) ("Admissible evidence necessarily encompasses evidence of the defendant's character, including evidence concerning the defendant's past, present and future, as well as evidence surrounding the nature of the crime committed by the defendant . . ., so long as that evidence is found by the trial court to be relevant . . . and not unduly prejudicial[.]"). To the extent that our cases and Rule 1101(b)(3) acknowledge that the rules of evidence generally do not apply to sentencing hearings, we find that relevant hearsay evidence is not prohibited at juvenile disposition hearings.

The second reason for rejecting this assignment of error is because Rule 40 of the West Virginia Rules of Juvenile Procedure authorizes circuit courts to order diagnostic evaluations for use at disposition proceedings. Obviously the rule authorizes diagnostic evaluations for the purpose of having circuit courts consider the material contained in the evaluations. It would be rather nonsensical to authorize an evaluation, but at the same time prohibit circuit courts from considering the information contained therein. Therefore, we make clear and so hold that, at a juvenile disposition hearing, a circuit court may consider all information contained in a diagnostic evaluation that was performed pursuant to Rule 40

20

of the West Virginia Rules of Juvenile Procedure.

In our review of the diagnostic evaluation, we have not encountered any information that could be deemed improper for consideration at the disposition hearing. To the extent that the evaluation reported incidents of bullying behavior by J.S. before and during his confinement, this information was appropriate for consideration by the circuit court.

### D. Failing to Commit J.S. to the Least Restrictive Placement

The fourth issue raised by J.S. is that the circuit court committed error in failing to commit him to the least restrictive placement. As previously noted, this assignment of error was combined in the brief with the third assignment error. As a result of combining the two assignments of error, the fourth assignment of error has been poorly briefed. The best that we are able to discern from the assignment of error is that the circuit court should have placed J.S. with Elkins Mountain School.[23] However, because J.S. has now turned eighteen years of age, he cannot attend Elkins Mountain School; therefore, he now asks that, as a remedy, this Court order him released from detention.

_____

[23]Elkins Mountain School is a private institution that "provides residential services to boys from 13 through 17 years of age[.]" http://www.emtns.org/html/about_us.html.

The State has briefed the issue of J.S.'s placement in a level four juvenile detention facility until he turns twenty-one years of age. The State contends that the circuit court followed the law in making the decision to place J.S. in detention. According to the State,

> [t]he trial court conducted a full evidentiary hearing on each Petition and arrived at its conclusions based on the petitioner's testimony, the testimony of the petitioner's parents, extensive psychological and substance abuse diagnostics, petitioner's history of behavioral issues, prior delinquency proceedings, reports from school officials and probation officers, as well as the statements and testimony of the petitioner's victims.

We agree with the State that the circuit court did not abuse its discretion in placing J.S. in detention.

The circuit court placed J.S. in a level four juvenile detention facility pursuant to W. Va. Code § 49-5-13(b)(5) (2012) (Supp. 2013), which states, in part:

> Upon a finding that the best interests of the juvenile or the welfare of the public require it, and upon an adjudication of delinquency . . . the court may commit the juvenile to the custody of the Director of the Division of Juvenile Services for placement in a juvenile services facility for the treatment, instruction and rehabilitation of juveniles. . . .[24]

---

[24]In addition to authorizing juveniles be placed in detention, "[o]ther options available under the statute range from dismissal of the delinquency petition to the referral of the juvenile to community-based programs or the placement of the juvenile under extra-parental supervision through the local probation office." *State v. Kenneth Y.*, 217 W. Va. 167, 170, 617 S.E.2d 517, 520 (2005).

22

(Footnote added). To help circuit courts apply W. Va. Code § 49-5-13(b)(5), we held the following in Syllabus point 4 of *State ex rel. D. D. H. v. Dostert*, 165 W. Va. 448, 269 S.E.2d 401 (1980):

> In a juvenile proceeding it is the obligation of a trial court to make a record at the dispositional stage when commitment to an industrial school is contemplated under W. Va. Code, 49-5-13(b)(5) [2012] and where incarceration is selected as the disposition, the trial court must set forth his reasons for that conclusion. In this regard the court should specifically address the following: (1) the danger which the child poses to society; (2) all other less restrictive alternatives which have been tried either by the court or by other agencies to whom the child was previously directed to avoid formal juvenile proceedings; (3) the child's background with particular regard to whether there are pre-determining factors such as acute poverty, parental abuse, learning disabilities, physical impairments, or any other discrete, causative factors which can be corrected by the State or other social service agencies in an environment less restrictive than an industrial school; (4) whether the child is amenable to rehabilitation outside an industrial school, and if not, why not; (5) whether the dual goals of deterrence and juvenile responsibility can be achieved in some setting less restrictive than an industrial school and if not, why not; (6) whether the child is suffering from no recognizable, treatable determining force and therefore is entitled to punishment; (7) whether the child appears willing to cooperate with the suggested program of rehabilitation; and, (8) whether the child is so uncooperative or so ungovernable that no program of rehabilitation will be successful without the coercion inherent in a secure facility.

*See State v. Kenneth Y.*, 217 W. Va. 167, 171, 617 S.E.2d 517, 521 (2005).

A review of the circuit court's disposition order clearly demonstrates that it complied with the statutory and case law requirements for placing J.S. in a level four juvenile

23

detention facility. Some of the dispositive findings by the circuit court included its grave concerns about the safety of other children if J.S. was placed at a facility like Elkins Mountain School:

> [1] That the West Virginia Department of Health and Human Resources advised that the Juvenile, [J.S.,] has a lot of issues with a history of bullying.
>
> [2] That this case is very troubling and is a classic case of bullying.
>
> [3] That the Juvenile has other offenses such as burglary to a neighbor's home.
>
> [4] That bullying is . . . difficult to address and next to impossible to cure.
>
> [5] That the Juvenile, [J.S.'s,] behaviors have continued against younger, weaker, and smaller kids.
>
> [6] That this is a cause for alarm and concern as it follows the Juvenile wherever he goes and the Juvenile continues to think he is entitled.
>
> [7] That the Juvenile would be going to prison [if] he were being tried as an adult.
>
> [8] That the Court hereby ORDERS that a Level 3 facility is not appropriate.
>
> [9] That the Court and West Virginia Department of Health and Human Resources could not ensure safety of other children at a Level 3 facility.
>
> [10] That the safety of other children could not even be ensured while the Juvenile was in detention.
>
> [11] That the Juvenile cannot go around picking on

24

people, hurting people and breaking into people's homes.

In addition to the above findings, the circuit court indicated in its disposition order that it attempted the least restrictive placement of J.S. when the court placed him on home confinement after the burglary adjudication. However, J.S. bullied and attacked a learning disabled student while on home confinement. Consequently, the circuit court recognized that "[r]emaining in the home or returning to the home would be contrary to the welfare of the juvenile."

Finally, the disposition order permits J.S. to earn the right to be placed in a level three facility. The order states "[t]hat if the juvenile completes the program and earns a Level 3 placement, as a step down the Court will consider that option." In the final analysis, we do not find that the circuit court abused its discretion in placing J.S. in a level four juvenile detention facility.

### E. Failing to Advise J.S. of His Right to Appeal

The fifth assignment of error by J.S. is that the circuit court failed to advise him of his right to appeal. The brief of J.S. spends the first two pages of this assignment of error rehashing previously-raised issues. At the conclusion of this discussion, the brief sets out one paragraph that merely states that a statute provides that a juvenile must be informed of

25

the right to appeal a disposition order. Although we find this issue was, at best, minimally briefed, we will address the matter.

Under W. Va. Code § 49-5-13(e) (2012) (Supp. 2013), "[f]ollowing disposition, the court shall inquire whether the juvenile wishes to appeal and the response shall be transcribed; a negative response shall not be construed as a waiver."[25] The circuit court did not advise J.S. of his right to appeal as required by the statute. Although this Court has not had an opportunity to address this issue, other jurisdictions that have addressed a similar issue have held "that a court's failure to advise a defendant of his right to appeal after sentencing is sufficient grounds for relief only when the defendant is prejudiced by the court's error." *Wilson v. State*, 833 N.W.2d 492, 497 (N.D. 2013). *See Peguero v. United States*, 526 U.S. 23, 28, 119 S. Ct. 961, 964-65, 143 L. Ed. 2d 18 (1999) ("In this case, petitioner had full knowledge of his right to appeal, hence the District Court's violation of Rule 32(a)(2) by failing to inform him of that right did not prejudice him."). It has been noted that "the large majority of these cases [find harmless error] because . . . the defendant either appealed anyway or learned of those rights from another source." *State v. Collins*, 298 P.3d 70, 72 (Utah Ct. App. 2013) (citations omitted). In view of these authorities, we now hold that a circuit court's failure to advise a juvenile delinquent of his or her right to appeal

---

[25]The West Virginia Rules of Juvenile Procedure do not have a provision requiring the trial court to inform a juvenile delinquent of the right to appeal.

26

after a disposition proceeding is sufficient grounds for relief only when the juvenile is prejudiced by the court's error.

In the instant case, J.S. has failed to show prejudice. J.S.'s counsel filed an appeal within the requisite time period. Accordingly, the circuit court's failure to advise J.S. of the right to appeal was not reversible error. *See In re L.C.A.*, 938 So. 2d 300, 306 (Miss. Ct. App. 2006) ("L.C.A.'s appeal is presently before this Court, so L.C.A. certainly experienced no prejudice based on the youth court's failure to specifically inform L.C.A. that he had the right to appeal.").

### F. Failing to Schedule a Review Hearing

J.S. contends that the circuit court failed to schedule a post-disposition judicial review hearing. For the reasons set out below, we find this issue is not properly before this Court.

Rule 43 of the West Virginia Rules of Juvenile Procedure provides that, after an adjudication in juvenile delinquency proceedings, where an MDT has been convened, a trial court must review the case with the MDT.[26] Rule 43(a) states that "the judicial reviews

---

[26]The full text of Rule 43 provides:

(continued...)

27

(a) Applicable Cases. Following adjudication, in every status offense case and in every juvenile delinquency case in which a multidisciplinary treatment team has convened, the court shall conduct regular judicial review of the case with the multidisciplinary treatment team. These judicial review hearings may be conducted as often as considered necessary by the court. Provided, if the juvenile is in an out-of-home placement, the judicial reviews shall occur at least once every three months.

(b) Hearing and Order. In review hearings, the court shall address the extent of progress in the case, treatment and service needs, permanent placement planning for the juvenile, the continuing necessity for and appropriateness of the placement, the extent of compliance with the case plan, including the progress made toward alleviating or mitigating the causes necessitating placement, and any other matters that the court considers pertinent. An order reflecting the matters covered, any uncontested rulings, and the scheduling of an evidentiary hearing on any contested matter shall be issued by the court within 10 judicial days of the judicial review.

© Required Findings. At the conclusion of each judicial review hearing, the court shall make a finding as to whether or not the department made reasonable efforts to finalize the permanency plan, and such finding shall be set forth in the written order issued following the hearing.

(d) Video Appearances. If video conferencing is available, the court may direct, with or without a motion, that the juvenile or other hearing participants may appear for a judicial review by video conference.

(e) Notice. In addition to the parties and counsel, foster parents or relatives providing care for the juvenile, if any, shall be given timely written notice of each review hearing, and shall

(continued...)

shall occur at least once every three months." The record in this case shows that the MDT evaluated J.S. prior to the burglary and battery disposition hearing. The circuit court entered the dispositional order placing J.S. in a level four juvenile detention facility on August 8, 2013. Under Rule 43(a), a review hearing should have occurred three months after the dispositional order. J.S. filed his appeal brief with this Court on September 5, 2013. At the time that J.S. filed his brief, the issue of a Rule 43 judicial review was not a matter in controversy because at least two months remained before such a review was required.[27] Moreover, there is no order or ruling on this matter for this Court to examine.[28] In effect, J.S. was premature in rasing an issue regarding a Rule 43 judicial review. *See Zaleski v. West Virginia Mut. Ins. Co.*, 224 W. Va. 544, 552, 687 S.E.2d 123, 131 (2009) ("[W]e have traditionally held that courts will not . . . adjudicate rights which are merely contingent or dependent upon contingent events, as distinguished from actual controversies." (internal quotations and citation omitted)).

---

[26](...continued)
be afforded the right to be heard in any such hearing.

[27]J.S. has not supplemented the record in this case regarding whether or not a Rule 43 review was requested and denied during the pendency of the appeal.

[28]The terse argument made by J.S. in his brief indicates that he has attempted to make this an appealable issue not for the purpose of having this Court direct the circuit court to hold a Rule 43 judicial review. Instead, J.S. is actually seeking to have this Court instruct the circuit court to "return [him] home on probation" at the conclusion of a Rule 43 judicial review.

**IV.**

**CONCLUSION**

The circuit court's order placing J.S. in a level four juvenile detention facility is affirmed.

Affirmed.