IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED
June 27, 2025
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

MILDRED J. MAZGAJ,
**Petitioner Below, Petitioner**

**v.) No. 24-ICA-395**          (W. Va. Office of Tax Appeals Docket No. 23-1064)

**MATTHEW R. IRBY, IN HIS OFFICIAL
CAPACITY AS STATE TAX COMMISSIONER
OF WEST VIRGINIA,
Respondent Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Mildred J. Mazgaj appeals the September 3, 2024, Final Decision of the West Virginia Office of Tax Appeals ("OTA") that affirmed the valuation by the State Tax Commissioner of West Virginia of Ms. Mazgaj's oil and gas interests in Ohio County, West Virginia. Respondent Matthew Irby filed a response in his official capacity as State Tax Commissioner of West Virginia ("Tax Commissioner").[1] No reply was filed.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming OTA's decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

During the relevant time period, Mildred J. Mazgaj owned mineral interests in seven natural gas wells in Ohio County. The parcel at issue in this appeal had 52.47567 acres producing oil and natural gas. This case arose after the Property Tax Division of the Tax Commissioner's Office issued a tentative notice of increase in appraisal to Ms. Mazgaj on January 17, 2023, notifying her that the tentative mineral appraisal for one of her oil and gas interests had increased by at least ten percent and one thousand dollars, as required by West Virginia Code § 11-6k-4(e)(1) (2014). The notice stated that the appraisal of her mineral interests increased from $530,343 in 2022 to $1,082,378 in 2023. The Final Notice of Appraisal was issued on May 22, 2023, by the Tax Commissioner, which reduced the value to $965,279.

---

[1] Petitioner is represented by J. Anthony Edmond, Jr., Esq. Respondent is represented by Sean M. Whelan, Esq., William E. Longwell, Esq., and John B. McCuskey, Esq.

1

Ms. Mazgaj filed a petition for a property tax appeal with OTA on January 30, 2023. On May 22, 2023, the Tax Department provided her a letter explaining that the appraised value was based on information provided by the oil and gas producing company for calendar year 2021. It stated that the 2023 appraised value was based on "ownership of the royalty interest on July 1, 2022, and the actual 2021 calendar year receipts, expenses, and royalties reported on annual property tax returns by oil and gas producers." The letter further explained that the appraised value was not the amount of tax due, but only a "projection of value of an interest in minerals over the remaining life of the mineral interests," which aimed to determine "the value the interest would receive if sold at market, not the actual income received." The letter contained additional explanation of the appraisal methodology and the various factors that could influence the calculation of the value of oil and gas royalty interests used with the calculations set forth in West Virginia Code and applicable legislative rules.

OTA conducted an evidentiary hearing on November 7, 2023, and both parties presented evidence and testimony. The main issue before OTA was whether the Tax Department properly valued Ms. Mazgaj's mineral interest. Frank Capehart, Assistant Director of the Tax Commissioner's Property Tax Division, testified regarding the process of valuing Ms. Mazgaj's interests, starting with the gross receipts paid to her by the producer. He also noted the volatility of oil and gas royalties in previous years due to changes in natural gas prices and the modification from using one-year averages to three-year averages in calculations. Mr. Capehart explained that "the only time acreage affects the valuation for an active oil and gas property is if the producing acreage exceeds 125 acres." He testified that none of Ms. Mazgaj's royalty interests exceed the 125-acre threshold, thereby rendering this provision meaningless for her valuation. After the hearing, the parties submitted briefs for OTA's consideration.

In her arguments, Ms. Mazgaj asserted that her mineral interest was improperly assessed because the Tax Department did not follow the guidelines in the pertinent emergency legislative rule sections 3.12 (defining "communitized area") and 3.34 (defining "natural gas producing property").[2] Ms. Mazgaj alleged that her mineral acreage

---

[2] The portion of the emergency legislative rule cited by Ms. Mazgaj, titled "Valuation of Producing and Reserve Oil, Natural Gas Liquids, and Natural Gas for Ad Valorem Property Tax Purposes," Code of State Rules §§ 110-1J-1 – 11, was drafted by the Tax Commissioner, pursuant to West Virginia Code §11-1C-10(d)(3)(G) (2022), as an emergency legislative rule to be effective for all assessments made on or after July 1, 2022, for the valuation of property producing oil, natural gas liquids, or any combination thereof because the prior rule was set to expire. The definitions cited by Ms. Mazgaj are as follows:

§ 110-1J-3. Definitions. As used in this rule and unless the context clearly requires a different meaning, the following terms have the meaning ascribed in this section.

should be split into two categories and assessed according to the definitions she cited from the emergency rule. Specifically, she asserted that the amount of her acreage that is included in a unit (i.e., her communitized acreage) should be divided by the total acreage of the unit and multiplied by 100 to result in a percentage figure representing the amount of acreage within the boundaries of a natural gas producing unit. Then that percentage should be multiplied by 125, since that is the upper limit of what is taxable at the producing acreage, according to section 3.34, to yield an acreage amount that is taxable at the production rate. Then that acreage amount should be subtracted from her total acreage within the producing unit to yield a number that should be taxed at the non-production rate in the district where the acreage lies. Ms. Mazgaj's briefing before OTA also purported to provide examples of how these calculations would result in showing which portions of her acreage was taxable at the "production rate," and which portions of her acreage was taxable at a "non-producing rate," and then how to determine what she claimed the proper assessed value should be.

--------

3.12. "Communitized area" means an area involving more than one lease, due to a cooperative agreement or legal mandate, and is developed for the drilling and operation of a single or multiple oil or gas wells, or both, by one or more operator.

3.34. "Natural gas producing property" means the property from which natural gas or natural gas liquids has been produced or extracted at any time during the calendar year preceding the July 1 assessment date. Natural gas producing property includes the interest or interests underlying an area of up to one hundred twenty-five (125) acres of surface per vertical well for property with active wells on the parcel; and communitized acres of surface per horizontal well for properties with one or more active wells. All acreage of a natural gas producing property in excess of one hundred twenty-five (125) acres per vertical well, or the communitized acres per horizontal well, shall be valued at the non-producing rate per acre referenced in section 4 of this rule.

Notably, the emergency rule cited by Ms. Mazgaj is no longer effective. After its adoption, the Legislative Rule-Making Review Committee proposed amendments that were adopted, and the final and current version of Code of State Rules §§ 110-1J-1 – 11, became effective April 24, 2023. For our purposes, however, the operative definitions are substantively unchanged, although the terms are now found in different subsections of the rule. To wit, the definition of "communitized area" is now found at West Virginia Code of State Rules § 110-1J-3.11, and "natural gas producing property" is now found at West Virginia Code of State Rules § 110-1J-3.33.

3

The Tax Commissioner argued that the Tax Department followed the required valuation method as set out in West Virginia Code § 11-1C-10 (2022) in assessing Ms. Mazgaj's mineral interest by following the process of applying a yield capitalization model to the net proceeds. The Tax Commissioner calculated the appraised value by starting with the royalty payments received by Ms. Mazgaj from the producer of the active wells on her parcel, then applying the formula under the provisions of West Virginia Code § 11-1C-10(d).

In its final decision, OTA determined that the controlling law to be applied in the appeal is West Virginia Code § 11-1C-10 and West Virginia Code State Rules §§ 110-1J-1 to -11, "where the valuation of mineral rights is based upon the royalty payments received as reported by the producer and the income approach to value, not acreage." OTA found that the approach suggested by Ms. Mazgaj was not supported by the law and that she did not meet her burden of proof to show that the Tax Department's actions were erroneous, unlawful, void, or otherwise invalid. Accordingly, OTA affirmed the Tax Commissioner's valuation of Ms. Mazgaj's property. It is from that decision that Ms. Mazgaj appeals herein.

The West Virginia Administrative Procedures Act governs our standard of review in administrative appeals, including appeals from final decisions of the Office of Tax Appeals:

> (g) The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the agency;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g) (2021). Further, regarding reviews of OTA decisions, the Supreme Court of Appeals of West Virginia has stated:

> Findings of fact of the administrative law judge will not be set aside or vacated unless clearly wrong, and, although administrative interpretation of State tax provisions will be afforded sound consideration, this Court will

4

review questions of law de novo. Syllabus Point 1, *Griffith v. ConAgra Brands, Inc.*, 229 W. Va. 190, 728 S.E.2d 74 (2012).

Syl. Pt. 1, *Antero Res. Corp. v. Steager*, 244 W. Va. 81, 851 S.E.2d 527 (2020).

On appeal, Ms. Mazgaj asserts four assignments of error. First, she argues that the OTA implicitly applied the incorrect burden of proof to Ms. Mazgaj's appeal because it agreed with and adopted the Tax Commissioner's arguments. In the Tax Commissioner's briefing below, it quoted Syllabus Point 2 of *Western Pocahontas Properties, Ltd. v. County Commission of Wetzel County*, 189 W. Va. 322, 431 S.E.2d 661 (1993), which states the "burden is on the taxpayer challenging the assessment to demonstrate by clear and convincing evidence that the tax assessment is erroneous." However, as Ms. Mazgaj correctly points out, the Legislature altered the burden of proof in West Virginia Code § 11-3-24a(e), effective July 1, 2022, to a preponderance of the evidence standard.[3] She argues that although the final decision does not explicitly state the burden of proof, because it found that Ms. Mazgaj did not meet her burden of proof and affirmed the valuation by the Tax Commissioner, OTA essentially endorsed the Tax Commissioner's flawed statement that the burden of proof was a clear and convincing evidence standard.

However, we cannot find that OTA erred by applying the wrong burden of proof when its decision does not affirmatively state the incorrect standard. The decision merely states that "the burden of proof is on the petitioner to show the West Virginia State Tax Department's actions are erroneous, unlawful, void or otherwise invalid" and cites to West Virginia Code § 11-10A-10(e) and West Virginia Code of State Rules § 121-1-63 (2003), which both generally provide that the petitioner has the burden of proof during an appeal hearing before OTA, except as otherwise provided by statute or legislative rule. There is no language in the decision that the petitioner must show error by the Tax Department to a clear and convincing standard of evidence. Moreover, to succeed in a judicial appeal of an administrative decision such as this one,

> An appellant must carry the burden of showing error in the judgment of which [she] complains. This Court will not reverse the judgment of a [lower tribunal] unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

Syl. Pt. 5, *Morgan v. Price*, 151 W. Va. 158, 150 S.E.2d 897 (1966); *Cobble v. Lester*, No. 24-ICA-201, 2024 WL 5201017, at *2 (W. Va. Ct. App. Dec. 23, 2024) (memorandum decision). Furthermore, "where an order of a court of record is merely silent upon any particular matter, it will be presumed, notwithstanding such silence, that such court

---

[3] The amended text states, "[t]he standard of proof which a taxpayer must meet at all levels of review and appeal under this section shall be a preponderance of the evidence standard." W. Va. Code § 11-3-24a(e) (2022).

5

performed its duty in every respect as required by law." Syl. Pt. 2, *State v. J.S.*, 233 W. Va. 198, 757 S.E.2d 622 (2014). Accordingly, we find no merit in this assignment of error.

For her second and third assignments of error,[4] Ms. Mazgaj claims that OTA abused its discretion by agreeing with the Tax Commissioner that "basing valuations on royalty production is unrelated to acreage" because "production itself is indeed based on a royalty owner's acreage contained within a unit." Accordingly, Ms. Mazgaj argues that the emergency legislative rule placing limitations on communitized acreage at 125 acres should directly impact the Tax Commissioner's calculation of her royalty production valuation and that OTA should have found that applying sections 3.12 and 3.34 of the emergency legislative rule that defined "communitized area" and "natural gas producing property" was necessary when making the relevant calculations.

Under West Virginia law, the Tax Commissioner was obligated to determine the value of property producing oil, natural gas, natural gas liquids, or any combination thereof "at its fair market value determined through the process of applying a yield capitalization model to the net proceeds." W. Va. Code § 11-1C-10(d)(3)(A) (2022).[5] The statute goes on to provide, "[f]or all assessments made on or after July 1, 2022, . . . [t]he yield capitalization model shall be composed of a working interest model and a royalty interest model." W. Va. Code § 11-1C-10(d)(3)(C)(i) (2022). "The summation of the working interest model and the royalty interest model shall represent the fair market value of the property." *Id*.

The emergency rule cited by Ms. Mazgaj contains a section titled "Methods of Valuation" that also dictates a process of applying a yield capitalization model to net receipts. W. Va. Code R. § 110-1J-4.1 (2022). Consistent with the statutory language cited above, the emergency rule describes a process of applying the yield capitalization model to the working interest and royalty interest models, and then explains how to determine the royalty interest calculations so that the amount will be "proportionally distributed to each royalty owner based on the royalty percentage received during the most recent calendar year to the July 1 assessment date." W. Va. Code R. § 110-1J-5.2.2 (2022). It continues,

> [t]he summation of the annual discounted income streams shall be the market
> value estimate for the royalty interest of the producing oil or natural gas well

---

[4] We consolidate these assignments of error for consideration as they are substantially similar and were consolidated in Ms. Mazgaj's briefing. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012).

[5] Although the Legislature has since amended the pertinent statute, we apply the statute that was in effect at the time of the underlying events.

for an area of up to one hundred twenty-five (125) acres per producing natural gas wells and up to forty (40) acres per producing oil wells.

*Id.*

Based on the record before us, the Tax Commissioner followed these procedures and determined the appraised value of Ms. Mazgaj's natural gas royalty interest for the 2023 tax year. Ms. Mazgaj does not argue any error in the calculations performed by the Tax Commissioner, except that she states that "the valuation process utilized by the Tax Commissioner's office is simply incomplete." However, rather than making a thorough, cogent argument regarding this assertion, Ms. Mazgaj summarily states that the definitions of "communitized area" and "natural gas producing property" from the emergency legislative rule should "come into play." Her brief before this Court does not outline the process she proposes should have been used, and without citation to the record, she only broadly references the "algebraic equation" she presented below to demonstrate what the valuation process would look like had the Tax Commissioner "followed the final piece of the puzzle." Upon review, we find nothing in the emergency rule's definitions of "communitized area" or "natural gas producing property" that would alter or add a step to the valuation provisions that were undisputedly properly undertaken by the Tax Commissioner. Accordingly, this assignment of error fails.

For her final assignment of error, Ms. Mazgaj asserts that OTA erred when it stated it does not have the authority to grant equitable relief because the Legislature granted it such authority in West Virginia Code § 11-10A-8 (2021). This contention arises from language in the OTA decision that characterized Ms. Mazgaj's alternative valuation calculations as an implicit argument for equitable relief based on how different-sized tracts of land are valued. OTA stated that it had limited jurisdiction and could not provide an equitable result. However, because we determined there was no merit in Ms. Mazgaj's arguments regarding her alternative valuation methodology, we need not consider whether OTA had the authority to grant her the relief she requested. Finding no error or other basis to disturb the decision on appeal, we affirm.

Accordingly, we affirm the September 3, 2024, decision of the Office of Tax Appeals.

Affirmed.

**ISSUED:** June 27, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

7